# ANDREW G. STEELMAN, Assignee *vs.* ANTON WEISKITTEL et al.

*Collateral Security—Sale of Pledge upon Default—Subsequent Purchase from Buyer by Pledgee—Redemption.*

A borrowed a sum of money from B, pledging with him as collateral security for the loan three bonds, with the right to sell the same at public or private sale upon default, without notice. The loan was not paid when due, and B caused the bonds to be sold by a broker at the Stock Exchange. They were bought by C, who was B's lawyer, but was not acting for him in this matter, and bought the bonds for himself. Subsequently, C sold the bonds to B. When they had appreciated in value, plaintiff, A's assignee, filed a bill alleging that C had bought the bonds as agent or trustee for his client, B, and that since a pledgee cannot purchase at his own sale, the bailment continued, and that plaintiff was entitled to redeem the bonds upon payment of the debt. *Held*, that these allegations were not sustained by the proof, but that C bought the bonds in good faith for himself and acquired a valid title, which he was entitled to transfer to B, who then held the bonds discharged from any right of redemption on the part of the pledgor.

Appeal from a decree of the Circuit Court No. 2 of Baltimore City (WICKES, J.), dismissing the bill of complaint so far as the property involved in this appeal was concerned.

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and PEARCE, JJ.

*Edward L. Ward*, for the appellant.

*Charles W. Field*, for the appellee.

McSherry, C. J., delivered the opinion of the Court.

This case is one mainly involving the finding of facts, for the law that must govern its decision is entirely free from difficulty. It is not disputed that one W. J. Atkinson borrowed from the appellee, Anton Weiskittel, the sum of one thousand dollars, for which he gave his promissory note for eleven hundred dollars. At the same time the appellee took, as collateral to secure the payment of the indebtedness, three bonds of the Home Telephone and Telegraph Company, each bond being of the par value of one thousand dollars. This note was renewed on August the tenth, eighteen hundred and ninety-seven by a new note payable in thirty days. On the face of the original and renewal note and above the signature of the maker, this stipulation appears: " I have deposited with ———————— as collateral security for the same, three thousand dollars in bonds of the Home Telephone Company, Nos. 71, 72, 73, with the understanding that if the terms of said loan are not promptly complied with according to this agreement, he is hereby authorized, without further notice to me, to sell the said collaterals at public or private sale, &c." When the renewal note fell due it was not paid and the appellee instructed Messrs. McKim & Company, bankers and brokers of Baltimore, to sell the collateral on the stock exchange for the best price obtainable, but at not less than thirty-six cents on the dollar. On September the eleventh, eighteen hundred and ninety-seven, McKim and Company offered the bonds for sale on the exchange, and they were then and there purchased by Isidor Schoenberg, Esq., for the sum of three hundred and sixty dollars each. Mr. Schoenberg paid McKim and Company and the latter credited the appellee Weiskittel's account with the proceeds. About October the seventh Weiskittel, desiring to acquire these bonds for a purpose that will be stated later on, purchased them from Mr. Schoenberg and paid him for them. On the first of October Atkinson, who had left the State, assigned to the appellant, Steelman, all of his, Atkinson's, right in and title to these bonds; and Steelman there-

after called upon Weiskittel, tendered the amount due on the note by Atkinson and demanded a return of the bonds. At that time the bonds had risen in value. Weiskittel refused to surrender the securities and Steelman then filed the bill now before us. The prayer of the bill is that Weiskittel be restrained from selling or disposing of the bonds until the right of the plaintiff to them can be determined.

There are two grounds upon which reliance is placed to sustain the prayer of the bill; and these are, *first*, that Mr. Schoenberg, who is an attorney-at-law, purchased the bonds for his client Weiskittel, and that therefore Weiskittel continued, in the eye of the law, to hold them precisely as he had originally held them, that is, as collateral security; *secondly*, that if Mr. Schoenberg actually bought the bonds for himself he bought them whilst he was acting in this particular transaction as counsel for Weiskittel, and therefore that he held them as trustee for his client to whom he was bound to deliver them upon being reimbursed his outlay, and that he accordingly did deliver them upon being required to do so. Upon both assumptions it is insisted that Weiskittel has acquired no better or different title to the bonds than he had before they were sold on the stock exchange, and that they may, consequently, be redeemed by the debtor or his assignee upon the payment to Weiskittel of the amount due on the dishonored promissory note.

That Weiskittel was fully authorized to sell without notice to the pledgor the hypothecated bonds on the stock exchange immediately upon default being made in the payment of the overdue note, cannot be disputed. And this cannot be disputed because the debtor specifically stipulated in the body of the note that the creditor should have the right to sell the bonds at either public or private sale without notice to the pledgor. The sale at the stock exchange was in fact a public sale. It was made in strict compliance with the power given by the pledgor, and if the purchaser was not the pledgee or some one acting for him and in his behalf, the title effectually passed out of Atkinson and there was no interest

left in him for the assignment to Steelman to operate upon. But a pledgee cannot purchase at his own sale. Such a purchase is contrary to the faith of the bailment, prohibited by the common law and inoperative in Maryland, because, if tolerated, it would violate the principle that no party can be permitted to purchase an interest when he has a duty to perform inconsistent with the character of purchaser. He cannot be allowed to occupy a position where his interest as purchaser may conflict with his duty as vendor. And it follows from this that the pledgor, notwithstanding the forms of a sale have been observed, if he purchased at his own sale the hypothecated securities or procured another person to purchase them for him, will continue to maintain the character of bailee and to hold the pledge as security for the payment of the loan. *Md. Fire Ins. Co.* v. *Dalrymple,* 25 Md. 242; *Balto. Marine Ins. Co.* v. *Dalrymple,* Ib. 269; *Bryson* v. *Rayner,* Ib. 424.

The whole controversy is thus reduced and narrowed down to mere questions of fact, and in dealing with these we shall do but little more than state our conclusions, inasmuch as an extended review or analysis of the evidence would serve no useful purpose whatever.

It is certain that Weiskittel himself gave McKim and Company instructions to sell the bonds at not less than thirty-six cents on the dollar, and that Mr. Schoenberg, ascertaining that the bonds were to be sold, called upon McKim and Company and authorized them to buy the securities for him at thirty-six, if they failed to secure a higher price for them from any one else. But both Mr. Weiskittel and Mr. Schoenberg unequivocally testify that there was no understanding or arrangement of any kind between them to the effect that the purchase if made by Mr. Schoenberg should be for Weiskittel's benefit. If any such agreement was made it could only have been made between these two parties; and in spite of their explicit and unqualified assertions that no such understanding existed, we are asked to hold that it did exist and was entered into, even though there has been no satisfactory evidence adduced to contradict or im-

peach these witnesses.    Mr. Schoenberg undoubtedly bought the bonds and undoubtedly paid for them; and apart from the statement made by another witness and emphatically denied by Schoenberg, there is no pretence that either Weiskittel or Schoenberg ever admitted or intimated that the purchase was made for Weiskittel. The alleged admission to which the witness just alluded to testified is thus given in the record: " If my recollection is correct, 1 think he (Schoenberg) said he was at the stock exchange and bought them (the bonds) in; at all events I am clear that he had them bought in *for himself*, and I am of the belief that he said be bought them in for *his client*." It is not easy to see how he could have said in the same breath that he had bought them in *for himself* and that he had bought them in for *his client*.    This is improbable on its face and is flatly contradicted by Mr. Schoenberg.    The mere fact that in other transactions Schoenberg had acted as the counsel of Weiskittel did not preclude him from purchasing these bonds for himself.

There remains nothing to suggest a suspicion that the purchase was made for Weiskittel apart from the fact that  a month after Schoenberg bought the bonds, he sold them to Weiskittel at the same price at which he had purchased them on the stock exchange.    Unexplained this circumstance might have some significance, especially as the bonds had then risen in value.    But the explanation given of this transaction is entirely satisfactory and strips it of all questionable appearance.    It seems that Cecil R. Atkinson, a brother of W. J. Atkinson, was also indebted to Weiskittel in a considerable amount, and Weiskittel was utterly unable to collect a dollar from him.    Whilst Schoenberg was the owner of the bonds Cecil Atkinson called on Weiskittel and inquired whether he could get the bonds back for his brother.    Weiskittel replied that he did not have the bonds, that he had sold them.    Then Cecil Atkinson offered to give Weiskittel a new note for four thousand four hundred and fifty dollars, covering his own and W. J. Atkinson's indebtedness, and to " append to that

note as collateral these three bonds, and, of course, other collateral, . . . I think it was four Cleveland bonds of the Telephone Company of Cleveland, Ohio, and one hundred and ten dollars in cash interest, and I agreed to do that . . . provided I could get these bonds." By this arrangement, had it been consummated, Weiskittel would have secured, what he did not have before, collateral of some value for the debt due by Cecil. Accordingly he saw Schoenberg and explained the proposal to him and asked him to sell him the three bonds at the price he had paid for them. Mr. Schoenberg said in reply, " there is nothing in this thing for me "; and Weiskittel made answer, " well, he owes you some money," and, " if I could get all my money there would be a nice profit for me, and I will agree to give you your money, this five hundred dollars, back." " Under these conditions Mr. Schoenberg sold me these bonds at exactly what he paid for them." Atkinson owed Mr. Schoenberg five hundred dollars and Weiskittel agreed to pay that sum to Mr. Schoenberg, provided the latter would sell him the bonds at the price he paid for them and provided Cecil Atkinson would pay when due the new note proposed to be given by him for forty-four hundred and fifty dollars. Subsequently Cecil Atkinson failed to comply with his proposal, though Weiskittel had bought and paid for the bonds; the new note was not executed and the whole negotiation between Weiskittel and Cecil Atkinson fell through. These events explain why and how Weiskittel acquired the bonds from Schoenberg, and fully and flatly negative the assertion that Schoenberg held the bonds as trustee for his client and that they were returned to the latter because of the obligation arising from the confidential and fiduciary relation existing between the attorney and the client.

There are other circumstances in the record to which allusion might be made, but we do not deem it necessary to pursue the subject further. Suffice it to say, we are entirely satisfied from an examination of the whole case that Mr. Schoenberg was not the counsel of

Mr. Weiskittel in the transaction relating to the sale of the bonds; that Schoenberg bought the bonds in good faith for himself and not for Weiskittel; that he acquired a perfectly good title by that purchase; that when Weiskittel bought from Schoenberg he secured just as complete a title as Schoenberg had; and that, therefore, the assignee of Atkinson had no right upon tendering payment of Atkinson's debt of eleven hundred dollars to demand the surrender of the bonds. This view accords with the conclusion reached by the Court below, and we shall therefore affirm its decree.

> *Decree affirmed with costs in this Court; the costs below to be apportioned as directed in the decree appealed from.*