CLARENCE H. VENNER, Appellant, vs. THE CHICAGO CITY
RAILWAY COMPANY et al. Appellees.

*Opinion filed June 29, 1910—Rehearing denied October 17, 1910.*

1. CORPORATIONS—*right of stockholder to examine books.* The
common law right of a stockholder to inspect the books and papers
of the corporation can only be exercised in good faith and for
reasons connected with his rights as a stockholder, but where the
right is given by statute in unlimited terms the purpose or motive
of the stockholder is immaterial and he cannot be required to
state his reasons.

2. SAME—*what is no defense to petition by stockholder to com-
pel inspection of books.* Where the right of a stockholder to in-
spect the books and papers of a corporation is given by statute in
absolute terms his petition for *mandamus* to enforce such right
need not show the object of his inspection; nor is it a defense to
the petition to allege an improper purpose, or that the information
is sought in order to injure the business of the corporation.

3. SAME—*all charters are subject to general laws enacted un-
der the police power of the State.* While charters of corporations
granted by the State are contracts within the protection of the
State and Federal constitutions against passing laws impairing
the obligation of contracts, yet all charters are subject to general
laws enacted under the police power of the State, and such power
cannot be curtailed by any previous attempt of the legislature to
grant immunity therefrom.

4. SAME—*statute giving stockholder the right to inspect books
is a police measure.* The object of section 13 of the general In-
corporation act, giving stockholders the right to inspect the books
and papers of the corporation, is not only to protect the rights of
the stockholder, but also to protect the public against unlawful
monopolies, combinations and unreasonable exactions, and is a
proper exercise of the police power of the State.

5. SAME—*section 13 of general Incorporation act construed.*
Section 13 of the general Incorporation act, requiring the direct-
ors "of every stock corporation to cause to be kept at its principal
office or place of business in the State correct books of account of
all its business" and giving "every stockholder in such corpora-
tion" the right to inspect the books, means "each one and all"
stock corporations and every stockholder in such corporations.

6. SAME—*section 13 applies to corporation whose special char-
ter is silent on the subject.* Section 13 of the general Incorpora-

tion act, requiring stock corporations to keep correct books of account at their principal office in this State and giving stockholders the right to examine such books, applies to corporations organized under prior special laws which are silent on the subject, and is a valid exercise of the police power of the State. (*Wincock* v. *Turpin,* 96 Ill. 135, *Union Life Ins. Co.* v. *Frear Stone Manf. Co.* 97 id. 537, and *Stevens* v. *Pratt,* 101 id. 206, distinguished.)

CARTWRIGHT and CARTER, JJ., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. BEN M. SMITH, Judge, presiding.

ELIJAH N. ZOLINE, for appellant.

E. R. BLISS, and GEORGE GILLETTE, for appellees.

Mr. CHIEF JUSTICE VICKERS delivered the opinion of the court:

Clarence H. Venner filed a petition for *mandamus* against the Chicago City Railway Company and its president and secretary to compel the defendants to permit him to examine the books, records and accounts of the company which were under the control of the president and secretary thereof. A demurrer having been sustained to the petition an amended petition was filed, alleging that Venner acquired certain shares of stock of the Chicago City Railway Company in the year 1905, which he held at the time the petition was filed. He alleged that he had made frequent applications to the company for the privilege of examining its books and that he had been denied such right. The amended petition contains other averments which were intended to support the application for *mandamus* on common law grounds. In the view that we have of this controversy it will not be necessary to determine the sufficiency of the petition under the common law, and therefore not necessary to set out those averments in the petition. A de-

murrer interposed to the answer filed by defendants was carried back and sustained to the amended petition. The petitioner elected to abide by his amended petition, and it was dismissed and judgment rendered against petitioner for costs. The Appellate Court for the First District affirmed the judgment below, and the cause has been brought to this court by petitioner on a certificate of importance.

Section 13 of chapter 32 of Hurd's Revised Statutes of 1909 provides as follows: "It shall be the duty of the directors or trustees of every stock corporation to cause to be kept at its principal office or place of business in this State, correct books of account of all its business, and every stockholder in such corporation shall have the right at all reasonable times, by himself or by his attorney, to examine the records and books of account of the corporation." This section of the statute is a part of our general act concerning corporations for pecuniary profit, which was approved April 18, 1872, and went into force July 1, 1872.

The Chicago City Railway Company was incorporated under a special public act of the legislature, which was approved February 14, 1859, and by its terms went into force from and after its passage. The act of 1859 created certain persons therein named a body corporate, by the name of "The Chicago City Railway Company," and authorized the said corporation to "construct, maintain and operate a single or double track railway, with all necessary and convenient tracks for turn-outs, side-tracks and appendages, in the city of Chicago, and in, on, over and along said street or streets, highway or highways, bridge or bridges, river or rivers, within the present or future limits of the south or west division of the city of Chicago, as the said council of said city have authorized said corporators or any of them, or shall authorize said corporators so to do." The capital stock of the said corporation was fixed at $100,000, with power to increase from time to time at the pleasure of said corporation, and it was provided by section 4 of

said act that "all the corporate powers of said corporation shall be vested in and exercised by a board of directors and such officers and agents as said board shall appoint. * * * They [the board of directors] may also adopt such by-laws, rules and regulations for the government of said corporation and the management of its affairs and business as they may think proper, not inconsistent with the laws of this State."

There is nothing in the act of 1859 in relation to the keeping of books by the corporation or the inspection thereof by the stockholders, and no express declaration in said act that the corporation thereby chartered should be subject to laws that might thereafter be passed by the legislature. Under the situation thus presented appellant contends that he has a statutory right, under section 13 of the general Corporation act, to inspect the books of the company. Appellees deny that the Chicago City Railway Company is subject to section 13, and insist that appellant's right to the inspection of its books exists only under the common law and must be exercised in accordance therewith.

There is a well recognized distinction between the right of a stockholder to inspect the books and papers of a corporation under the common law and an unlimited right given by statute. Under the former the examination can only be compelled where the stockholder asks it in good faith and for reasons connected with his rights as a stockholder. (*Heminway* v. *Heminway,* 58 Conn. 443; *Sage* v. *Lake Shore Railroad Co.* 70 N. Y. 220; *Phœnix Iron Co.* v. *Commonwealth,* 113 Pa. St. 563; *Stone* v. *Kellogg,* 165 Ill. 192.) Where the right is conferred by statute in absolute terms, the purpose or motive of the stockholder in making the demand for an inspection is not material and he cannot be required to state his reasons therefor. (Thompson on Corporations,—2d ed.—sec. 4516.) The weight of American authority is to the effect that where the right is statutory the stockholder need not aver or show the object

of his inspection, and it is no defense under a statute granting the absolute right to inspection to allege improper purposes or that the petitioner desires the information for the purpose of injuring the business of the corporation. A clear legal right given by a statute cannot be defeated by showing an improper motive. If this were so, the stockholder would be driven from a certain definite right given him by the statute, to the realm of uncertainty and speculation. (Thompson on Corporations, *supra; Johnson* v. *Langdon,* 135 Cal. 624; 87 Am. St. Rep. 156.) Leaving out of view entirely the sufficiency of the petition under the common law it must be conceded that it is sufficient under the statute, and it follows that if section 13 of the general Corporation law applies to the Chicago City Railway Company, the court erred in sustaining the demurrer to and dismissing the amended petition.

Charters granted to a corporation by the legislature are regarded as contracts between the corporation and the State and are within the protection of the constitution of the United States, which prohibits a State from passing any law impairing the obligation of contracts. While these rules are fundamental and are thoroughly established in the American law of corporations, still the State possesses certain reserved powers in relation to the control and management of corporations which can never be surrendered. One legislature cannot tie the hands of future legislatures so as to prevent the proper exercise of the reserved rights of the people to pass all reasonable laws which the constantly changing conditions of the State may require for the promotion of its general welfare. Whatever grants, stipulations or restrictions may be found in a charter of a corporation, it is within the power of subsequent legislatures to render it subject to general laws enacted under the police power of the State. The power of the State to protect the lives, limbs, health and property of all persons within the State exists at all times, and its proper exercise cannot be

restricted or embarrassed by any previous attempt to grant any person, either natural or artificial, immunity from its exercise. In *Galena and Chicago Union Railroad Co.* v. *Appleby,* 28 Ill. 283, this court held that an exemption in a railroad charter from the 38th section of the general Railway law, which required locomotives to carry a bell of at least thirty pounds weight, or a steam whistle, and that the bell be rung or the whistle blown at the distance of at least eighty rods from every road crossing, did not give the railroad company a vested right to operate its trains without complying with said section, and that the legislature had the power to repeal the exemption clause in the charter and to require the railroad company to comply with the general law upon that subject. And in *Ohio and Mississippi Railroad Co.* v. *McClelland,* 25 Ill. 123, the question was presented whether the General Assembly might require railroads already constructed and in operation to fence their tracks where there was no such requirement imposed by the charter, and it was there held that it was a police regulation and that the legislature might impose the duty. It was also held that the right to adopt such police regulations for the safety of the people is a fundamental principle lying at the very foundation of government itself and may be exercised by the legislature upon individuals and corporations alike; that when these bodies accept their charters it is upon the implied condition that they are to exercise their franchises subject to the power of the State to impose such regulations as the safety of the public may require; and it was said in that case, "that when the safety of persons or property may require it, the legislature may demand the exercise of their franchises in such a mode as to afford the necessary protection." In *Toledo, Peoria and Warsaw Railway Co.* v. *Deacon,* 63 Ill. 91, it was held that by the grant of corporate franchises to railroad companies to procure the right of way and operate their trains by the power of steam the State did not deprive itself of its inherent

power to enact all police laws necessary and proper to protect the lives and property of its citizens.

The distinction between the powers which the legislature may exercise where there is an express reservation in the charter and those which may be exercised under the general police power where there is no reservation is not very clearly drawn. In those cases where a reservation is present the subsequent legislation has usually been sustained because of such reservation, and where no reservation is found, the subsequent legislation is sustained, if at all, under the general police power, which, as we have already seen, is always reserved. Even where the power of the State to alter or amend a charter is expressly reserved in the grant, it is still subject to the limitation that it shall not be exercised in such way as to destroy vested rights, or impair the obligations of contracts. The legislature cannot reserve the right to pass an unconstitutional law under the guise of altering or amending a corporate charter. (*Dartmouth College case*, 4 Wheat. 518; *Hays* v. *Commonwealth*, 82 Pa. St. 518.) Subject to these limitations the legislature has the power to make any reasonable amendments regulating the exercise of the corporate franchises which in its discretion may be deemed necessary or proper. *Shields* v. *Ohio*, 95 U. S. 324; *Maynard* v. *Looker*, 111 Mich. 498; 56 L. R. A. 947.

By reference to section 13 of our general Corporation act it will be seen that there are two propositions embodied in that section. The first proposition imposes a duty upon the directors or trustees of "every stock corporation to cause to be kept at its principal office or place of business in this State, correct books of account of all its business;" and the second proposition is, that "every stockholder in such corporation shall have the right at all reasonable times, by himself or by his attorney, to examine the records and books of account of the corporation." The intention of the legislature in passing this section is the controll-

ing consideration in determining its proper construction. Manifestly, the principal purpose of the legislature was to protect the rights and interests of stockholders. But this was not the sole purpose. In order to protect the public from monopolies, unlawful combinations and unreasonable exactions from corporations enjoying special franchises and privileges, the State has the right to exercise a visitorial power over them, and to make this power effective and to facilitate its exercise was one of the important purposes in requiring "every stock corporation to cause to be kept at its principal office or place of business in this State, correct books of account of all its business." In the case of *North and South Rolling Stock Co.* v. *People*, 147 Ill. 234, in discussing this section of the statute, this court, on page 252, said: "The thirteenth section of the statute under which the defendant was incorporated provides that it shall be the duty of the directors or trustees of every stock corporation to cause to be kept at its principal office or place of business in this State correct books of account of all its business, and every stockholder in such corporation shall have the right at all reasonable times, by himself or by his attorney, to examine the records and books of account of the corporation. It would seem that the primary object of this statutory provision is to protect the rights of stockholders, and the evidence is positive that whenever a stockholder has desired to examine the books at that place they have been produced there for his examination. It is probable that the statute may have had other objects in view in requiring the books to be kept at the principal office in this State, as, for instance, to aid the State in exercising its visitorial power over the corporation, or, perhaps, to enable creditors of the several stockholders to ascertain the number of shares of stock standing in the names of each, so as to levy their executions or attachments thereon."

In the case of *People* v. *Chicago, Indianapolis and Louisville Railway Co.* 223 Ill. 581, this court had under

246—12

consideration the validity of section 6 of the act relating to the railroad and warehouse commissioners in its application to a railroad doing an inter-State business. Section 6 requires: "Every railroad company incorporated or doing business in this State, or which shall hereafter become incorporated or do business under any general or special law of this State, shall, on or before the first day of September, in the year of our Lord 1871, and on or before the same day in each year thereafter, make and transmit to the commissioners * * * a full and true statement * * * of the affairs of their said corporation as the same existed on the first day of the preceding July." This court held that section 6 was a valid exercise of the general police power of the State, and that it was within the reserved powers of the State to require all railroad companies, whether incorporated under the laws of this or any other State, to make and transmit a detailed report once each year. On page 593, in discussing the purposes to be accomplished by section 6, this court said: "All this is, manifestly, for the purpose, in part at least, of uncovering the necessity for such corrective legislation as the State may properly enact. How is the commission to perform these duties unless it has some means of obtaining the necessary data upon which it can act, and such as the executive and legislative branches of the government will require as a guide in the application of appropriate remedies? Section 6 meets this requirement and is the superstructure of the whole act. This law does not impose any tax or license on the business or the property of the company. It does not direct when or how its trains shall be run, or seek to direct, manage or control its internal affairs. So far as this particular section is concerned, it, in effect, says: 'Do your business in your own way, but report to the people of the State once a year what you have, what you are doing and how you are doing it.'"

If the legislature may require railroad corporations incorporated under the laws of other States and engaged in inter-State commerce to make these annual reports under the general police power of the State, it would seem clear that section 13 of our general Corporation act might be held to apply to the Chicago City Railway Company, and that such company could be compelled by a *mandamus* to keep correct books of account at its principal office in this State. If this section does not apply to appellee the Chicago City Railway Company, then it may move its principal office to New York or London and keep its books there. There is nothing in the law of 1859 that would prohibit the establishment and maintenance of its principal office in a foreign State or country. It cannot, we think, be seriously contended that the State ever intended that corporations chartered by our legislature should enjoy such complete immunity from the visitorial powers of the State as would result if the construction of section 13 contended for by appellees were adopted. To require corporations to keep correct books of account in this State and to permit their inspection by stockholders does not deprive such corporations of any vested rights or impair the obligations of any contracts, and cannot, therefore, be held unconstitutional when applied to the Chicago City Railway Company. It will be noted that the language "every stock corporation," and "every stockholder in *such* corporation," is broad, comprehensive and unambiguous. If the requirement that "every stock corporation" shall keep correct books at its principal office in this State includes the Chicago City Railway Company, then there is no escape from the conclusion that the other clause, "every stockholder in *such* corporation," includes its stockholders, and the right of the stockholder to examine the books and records exists in all cases where the first clause requires the keeping of such books. The word "every," as used in this section, means "each one and all." It must be held to include the Chicago

City Railway Company and its stockholders, unless to so hold would render the act violative of some vested or constitutional right. Similar language to that now under consideration has been judicially construed. A statute of New York provided that "every foreign corporation having an office for the transaction of business in this State shall keep therein a book to be known as a stock book, containing the names * * * of stockholders," and required such book to be open daily for the inspection of stockholders, and provided a penalty of $250 for the refusal to permit any stockholder to examine such book, which penalty was incurred both by the corporation and the officer or agent refusing such examination. In a suit for the penalty by a stockholder for refusing him the right to inspect the book, it was held that the language "for any refusal" meant every refusal, and that cumulative penalties could be recovered for each daily refusal. In the course of the opinion it is there said: "Johnson says the word *'every'* means 'each and all,' and the same great lexicographer defines 'any' to mean 'every,' and says it is in all its senses applied indifferently to persons or things." (*Purdy* v. *People,* 4 Hill, 384.) In *Cox* v. *Island Mining Co.* 73 N. Y. Supp. 69, it was held that the language of the New York constitution, "any corporation," meant every corporation, and that it included all corporations, both public and private. Thompson, in his work on Corporations, (2d ed. sec. 4516,) says: "These statutes [giving stockholders the right to inspect books] apply as well to pre-existing as to subsequently organized corporations," and in support of the text cites *Bay State Gas Co.* v. *State,* 4 Penne. (Del.) 238; 56 Atl. Rep. 1114. That case will be found, upon examination, to sustain the text above quoted. In the Delaware case certain stockholders of the gas company filed a petition for *mandamus* to compel the inspection of certain books and papers, and based their right to relief on section 29 of the general Corporation law of the State of Dela-

ware. The gas company contended that section 29 did not apply to any corporations except those formed under the general Corporation law, but the Supreme Court held otherwise and sustained the contention of the petitioner that the statute giving the stockholder the right to inspect the books was general and included the gas company, although it was not organized under the general Corporation law of the State.

Counsel for appellees attempt to avoid the force of the Delaware case by calling attention to the fact that the court found evidence of the legislative intention to make section 29 applicable to previously existing corporations in section 3 of the act under consideration. It is true that the court referred to section 3 as manifesting an intention that the act should be applied to corporations previously formed. This circumstance does not in any degree weaken the authority. The case is an authority for the general proposition that the legislature may pass a general law of this character and make it applicable to corporations previously organized. This simply brings us back to the question whether there is a manifest intention in section 13 of our Corporation act that it shall apply to corporations previously organized. The difference between the Delaware case and the situation presented by this record is, that in the Delaware case the legislative intention was gathered from the consideration of two sections of the statute of that State, while in the case at bar we think the legislative intention to apply section 13 to pre-existing corporations is clearly manifest from the language of said section 13 alone.

Appellees insist that this court is committed to the holding that section 13 only applies to corporations organized under the general Corporation law. In support of this contention they rely on *Wincock* v. *Turpin,* 96 Ill. 135, *Union Life Ins. Co.* v. *Frear Stone Manf. Co.* 97 id. 537, and *Stevens* v. *Pratt,* 101 id. 206. None of these cases apply to section 13 of our chapter on corporations. The *Turpin*

*case*, in 96 Ill., was a bill by a receiver and a depositor against certain stockholders in a bank to enforce their liability under section 25 of the general Corporation act, and it was held that section 25, which provides that when certain contingencies arise suits in chancery may be brought by joining the corporation in the suit against all the stockholders, and each stockholder may be required to pay his *pro rata* share of the debts against the corporation to the extent of his unpaid stock after exhausting the assets of the corporation, applied only to corporations organized under that law and did not embrace bodies created by special charter. If the question here presented was whether section 25 applied to the Chicago City Railway Company that case would be an authority in point, but it does not follow because section 25 does not apply to companies specially chartered, no other part of the chapter can be applied to such companies. The other cases cited and relied on by the appellees are not in point for the same reason. None of them involved a consideration of section 13. There is nothing in those cases, or in any others decided by this court to which our attention has been called or which we have been able to find, that precludes this court from holding section 13 applicable to the Chicago City Railway Company. Said section is a proper exercise of the general police power of the State, the enforcement of which will tend to protect the property rights of stockholders, and the security thus afforded will enhance the value and facilitate the sale of corporate stocks.

Appellant's petition states a proper case for a peremptory writ of *mandamus* under section 13 of the statute.

From what has been said it follows that the court erred in sustaining the demurrer to the petition.

The judgments of the Appellate and superior courts are reversed and the cause is remanded to the superior court for further proceedings in accordance with the views herein expressed. *Reversed and remanded.*

Mr. JUSTICE CARTER, dissenting:

I do not concur in the conclusion reached in the foregoing opinion. If it were a question of the wisdom of a legislative enactment requiring that the provisions of section 13 of the general Incorporation act of 1872 should apply to all corporations I should most heartily concur, but the question here is whether the legislature intended that section to apply to corporations not organized under the act. This court has already decided that section 25 of this act did not affect corporations not organized thereunder. (*Stevens* v. *Pratt,* 101 Ill. 206; *Wincock* v. *Turpin,* 96 id. 135.) Section 5 expressly provides that "the provisions of this section shall apply to and be binding upon all corporations now existing by virtue of any special charter granted by this State." In section 26 of the act foreign corporations are expressly mentioned. It would seem to follow naturally that the legislature, in expressly mentioning other corporations in certain sections, did not intend the other sections of this general Incorporation act to apply to corporations not organized thereunder. To hold otherwise seems inconsistent not only with the provisions of said sections 5 and 26, but as well with the decisions of this court construing section 25. I do not think that section 13 was intended to apply to corporations not organized under that act.

Mr. JUSTICE CARTWRIGHT dissenting:

The general Incorporation act provides for the organization, management and dissolution of corporations and defines the rights of stockholders of such corporations. The decision that section 13, which gives to stockholders the right to examine the records and books of account of the corporation, extends to corporations created by special acts, seems to me to disregard a settled and established rule for the construction of statutes which was followed and applied in the decision of the case of *People* v. *Healy,* 231 Ill. 629, and was applied to the act now in question in *Wincock* v.

*Turpin,* 96 Ill. 135. The supposed distinction between this case and the one where section 25 was held not to apply to corporations created by special acts, which the opinion adopted in this case says exists, is purely verbal and seems to me to be without substance. The opinion recognizes, and by citation of authorities shows, that the words "any corporation," used in section 25, and "every corporation," found in section 13, mean precisely the same thing. So the only distinction, in fact, between the former decision and this one is that the sections are numbered differently, one being numbered 25 and the other 13. That, of course, affords no ground for applying a different rule of construction to the different sections.