(No. 11822.—Judgment affirmed.)

FRANK E. FURST, Appellee, *vs.* THE W. T. RAWLEIGH
MEDICAL COMPANY *et al.* Appellants.

*Opinion filed February 20, 1918.*

1. CORPORATIONS—*extent of statutory right of stockholders to
examine books and accounts.* The statutory right of stockholders
of a corporation to examine the books and accounts of the corpo-
ration is unqualified and unrestricted, except that the right shall be
exercised at reasonable times and under such conditions as will not
unduly hinder and embarrass the company in the conduct of its
business; and the fact that a stockholder is interested in a compet-
ing corporation and by such an examination may obtain informa-
tion that will benefit the rival company is not sufficient to deprive
him of his statutory right.

2. SAME—*when a stockholder's petition for mandamus is suffi-
cient to show demand and refusal.* A stockholder's petition for a
writ of *mandamus* requiring the officers of a corporation to permit
him to examine the books and accounts of the company is sufficient
to show a demand and refusal, where it alleges that the petitioner
made written application to the company to examine its records
and books of account and that on each occasion such permission
was refused to him by the company.

3. SAME—*a stockholder's right to examine books and accounts
cannot be defeated by corporation hiring an auditor.* The statu-
tory right of a stockholder to examine the books and accounts of a
corporation cannot be defeated by the corporation by hiring an aud-
itor to make an audit of its business and affairs and allowing the
stockholder to examine the auditor's report.

4. APPEALS AND ERRORS—*question not raised in Appellate Court
cannot be raised for first time in Supreme Court.* Where the rec-
ord and opinion of the Appellate Court do not show that a question
as to the sufficiency of a petition for a writ of *mandamus* was raised
in that court it is too late to raise the question for the first time
in the Supreme Court.

5. MANDAMUS—*question of sufficiency of verification to petition
must be raised by motion before joinder of issue.* The object of
requiring a verification to a petition for a writ of *mandamus* is to
show the court that the facts therein stated are true, and a ques-
tion as to the sufficiency of the verification must be raised by mo-
tion to strike the petition before joinder of issue of law or fact.

6. SAME—*when costs of appeal may be taxed to the petitioner.*
The matter of taxing costs on appeal rests largely in the discre-

tion of the court making the order, and where the judgment of the trial court is erroneous in awarding the petitioner for a writ of *mandamus* a larger measure of relief than he is entitled to under the showing made, making it necessary for the defendants to appeal to the Appellate Court to correct the error, the costs of the appeal may be taxed to the petitioner.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Stephenson county; the Hon. RICHARD S. FARRAND, Judge, presiding.

R. R. TIFFANY, and C. E. CRUIKSHANK, for appellants.

LOUIS H. BURRELL, and HAROLD D. JAMES, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a proceeding by *mandamus* in the circuit court of Stephenson county by Frank E. Furst, appellee, against the W. T. Rawleigh Medical Company, W. T. Rawleigh, its president and treasurer, and J. R. Jackson, its secretary, appellants, to compel them to permit appellee at all reasonable times to examine the records and books of account of the company.

As a basis for the relief sought the petitioner alleged the following: The W. T. Rawleigh Medical Company is organized as a corporation under the general Incorporation law of this State, with its principal office and place of business in the city of Freeport. It has a capital stock of $1,000,000, consisting of $500,000 common and $500,000 preferred stock, of which all the common stock and about $12,000 of the preferred stock has been issued. Appellee is the owner of thirty-five shares of the common stock, of the par value of $100 each. The company is engaged in the compounding, manufacture and distribution of proprietary medicines, extracts, essences and stock food, which it sells through salesmen or peddlers who travel about the

country and dispense its products from wagons. From 1200 to 1500 salesmen are thus employed, and the company is doing a prosperous business but since 1908 has paid no dividends on its stock. Since that time the officers of the company have refused to make any annual report of the manner of conducting the business and disposition of the proceeds and income. In the months of April, May and June of 1914 the corporation, through its officers, unjustly deprived appellee of his right to examine the records and books of account of the corporation, in violation of the provisions of section 13 of chapter 32 of the statutes of this State. Petitioner prays that a writ of *mandamus* issue against the W. T. Rawleigh Medical Company and its officers compelling them to allow appellee or his attorney at all reasonable times to examine the records and books of account of the company, and for such further relief as justice may require.

The appellant company and W. T. Rawleigh, its president and treasurer, demurred to the petition, which demurrers were overruled. J. R. Jackson, as secretary, answered the petition. The answer admits the W. T. Rawleigh Medical Company is incorporated under the general Incorporation law of this State; that appellee is the owner of thirty-five shares of stock therein, of the par value of $100 each; that it is engaged in making and selling numerous medicines and proprietary articles which are put up according to secret formulas invented by it and known only to its employees; that it has spent large sums of money in experimenting and perfecting such medicines and proprietary articles; that for some years prior to 1908 appellee was in the employ of the company as general manager and had access to its records, books and accounts and was familiar with its business and financial condition. It is further set up in the answer that in January, 1908, appellee quit the employ of the company, and with one McNess, who was formerly chief chemist of the company and familiar with its secret formulas and com-

pounds, started a rival company, known as the Furst-Mc-Ness Company, and the answer sets forth at great length that appellee is intending to use the information obtained from the company's records and books to duplicate its methods of manufacturing and compounding its various products and to secure a list of its salesmen and customers and induce them to become salesmen and customers of the rival corporation. It sets forth letters from appellee to former salesmen of the company designed to induce them to leave their positions with the appellant company and take similar positions with the rival corporation, and also letters seeking to prejudice customers of the appellant company against it, in which letters reference is made to a number of former salesmen and customers of the appellant company who have pursued the course suggested. The answer further alleges that the corporation spends a large sum of money each year in experimental and research work and since 1908 has originated and put upon the market many new preparations, and that the kind, quantity, grade, price, classification and names and addresses of sellers of all materials used are invoiced and recorded in the general ledger and purchase ledger, thus affording to one who examines such books a list of all domestic and foreign firms from whom supplies are bought and the kind, quantity and quality purchased, which would enable one experienced in that line of business to purchase the same kind, quality and grade of materials and imitate the latest products of the laboratories of the appellant company, which had been devised by it at an enormous cost; that the company has employed disinterested, high-grade public accountants each year to audit all of the different classes of the company's assets, liabilities, cash receipts, disbursements, merchandise and expense accounts, etc., and to make recommendations tending to improve the business methods of the company, and that at the annual stockholders' meetings these auditors' reports were furnished to the stockholders; that appellee was present at the April, 1914,

282 – 24

meeting, when the annual reports of officers were made, at which all stockholders were invited to ask for all information desired, and that appellee was given all information asked for by him at such meeting. The answer further alleges that at the June term, 1908, of the circuit court of Stephenson county appellee filed his petition for *mandamus* against the W. T. Rawleigh Medical Company and its president and treasurer, praying for the issuance of a writ of *mandamus* authorizing him, in person or by attorney, to examine the record books and accounts of the company; that a judgment was entered awarding such writ, which judgment, on appeal to the Appellate Court for the Second District, was affirmed by that court on May 16, 1910; that thereafter the case was re-instated in the lower court and a writ of *mandamus* issued commanding the company to permit appellee or his attorney, for the purpose of ascertaining the financial condition of the company, to examine all books of account and records of the corporation, (excepting certain books kept by the secretary, the register's report of salesmen, correspondence and contracts and formulas and secret processes,) at all reasonable times during business hours, from day to day, until a complete examination of the financial condition of the company is made; that on June 28, 1910, appellee notified appellant that he intended to make an examination of such books in accordance with the terms of the court order but that no such examination was made; that on July 27, 1910, appellants informed appellee by letter that immediately upon receipt of the former notice arrangements had been made to permit him to make such examination, and that as none such had been made, suggested that if appellee intended to make the examination he do so within a reasonable time, especially requesting that it be made during the fore part of the month of August, and advising him that suitable provision would be made for such examination to commence on August 8, but that appellee did not avail himself of the opportunity

until the latter part of August, when he presented himself at the office of the company, and after examining certain books for a couple of hours left the office and did not thereafter return to make a further examination of the books, although his conduct was such as to require the company to continue to discommode and inconvenience itself and employees in keeping the books in such manner that appellee, upon his return, could raise no question as to not having had access to such books; that twenty-three clerks and about fifty important books of records are in almost daily use by the company, and that the making of a detailed and accurate examination of such books by appellee would seriously interfere with the conduct of the business of the company.

Appellee demurred to the answer, which demurrer the court sustained, and the company and W. T. Rawleigh, as president and treasurer, electing to abide by their demurrers, and appellant Jackson electing to abide by his answer, a judgment was entered against appellants awarding the peremptory writ, commanding them to admit appellee, in person or by attorney, to the principal office of the company at all reasonable times to make an examination of the records and books of account of said company. An appeal from this judgment was taken to the Appellate Court for the Second District, where the judgment of the lower court was modified so as to exempt from its operation the register of salesmen, correspondence and contracts with salesmen, and formulas and secret processes for the manufacture of the preparations sold by the company, and the right of examination was restricted to business hours and to continue only so long as appellee was a stockholder, and the judgment of the lower court was affirmed in part and reversed in part and the costs of the appeal taxed to appellee. A certificate of importance and appeal were granted by that court, and the cause is in this court pursuant to such certificate and appeal.

Appellee bases his right to the writ on the provisions of section 13 of chapter 32 of the statutes of this State. That section provides as follows: "It shall be the duty of the directors or trustees of every stock corporation to cause to be kept at its principal office or place of business in this State, correct books of account of all its business, and every stockholder in such corporation shall have the right at all reasonable times, by himself or by his attorney, to examine the records and books of account of the corporation."

The right of examination conferred upon the stockholder by this statute is unqualified and unrestricted, except, only, for the limitation that the right shall be exercised at reasonable times. In *Stone* v. *Kellogg,* 165 Ill. 192, we held the right of examination conferred by this section was absolute, subject only to the express limitation that it should be exercised at reasonable times and to the implied limitation that it should not be exercised out of mere idle curiosity or for some unlawful purpose. We there further held that the stockholder was not required to show his reason or purpose for making the examination, and that his motives in making such examination were not subject to inquiry by the custodian of such books and records. In the still later case of *Venner* v. *Chicago City Railway Co.* 246 Ill. 170, we re-affirmed the doctrine of the *Stone case* and again pointed out that the motive of the stockholder in seeking to make such examination was immaterial, and that it was no defense in such action to allege that the stockholder was actuated by improper motives or that the information was sought in order to injure the business of the corporation. A like conclusion has been reached by the courts of other States in construing similar provisions in the statutes of their States. In *State* v. *Bucklin,* (Wash.) L. R. A. 1915D, 285, it was held no defense to such action that the petitioner was a stockholder in a rival corporation and desired to inspect its books to enable him to ascertain its prices and customers, to underbid and discredit it with such customers.

In that case, quoting from *Weihenmayer* v. *Bitner,* 88 Md. 523, it was said: "The right thus given to the stockholder is unconditional and unqualified. * * * It is stated in the answer to the petition that Weihenmayer is engaged in the manufacture and sale of hosiery and knit goods and is a rival and competitor of the Windsor Knitting Mills in business, and that he desires an examination of the books, documents and records of the corporation for the purpose of obtaining information to be used by him in the conduct of his own business, to the injury and loss of the said corporation. * * * But the petitioner's right would not be forfeited by any such cause. The right is given to him, as a stockholder, by statute, and is absolute and not made to depend upon any circumstance but the ownership of the stock. It is easy to see that there might be good reasons for refusing an application,—for instance, if it were made for some evil, improper or unlawful purpose,—and if such purpose were alleged and proved the writ would be denied." It is there further said: "Whatever the view of the court in this last quoted language is as to reasons and motives on the part of the stockholder warranting the custodian refusing inspection of the records, it is apparent that the fact that such stockholder is interested in a rival concern which is in competition with the corporation, and might, by the examination of the books of the corporation, acquire and use knowledge in aid of the other concern to the detriment of the corporation by way of competition, his right to the inspection of the books would not thereby be affected in the least." To the same effect are *Johnson* v. *Langdon,* 125 Cal. 624; *Kimball* v. *Dern,* 29 Utah, 181; 35 L. R. A. (N. S.) 135; *Cincinnati Volksblatt Co.* v. *Hoffmeister,* 62 Ohio St. 189; *Kuhback* v. *Irving Cut Glass Co.* 220 Pa. St. 427; 30 L. R. A. (N. S.) 185.

Under the holdings in the foregoing cases the matters of fact set forth in the answer of Jackson are insufficient to bar appellee of his right of examination under the lim-

itation placed upon the exercise of such right by the judgment of the Appellate Court. While there is much in the pleadings which shows that appellee is particularly hostile towards the officers of the appellant company and which leads one to seriously question whether he is actuated by any other motive than that of harassing and annoying that company, no facts are alleged which show an abuse by him of the exercise of his rights as a stockholder under our statute. The fact that he is interested in a competing corporation and has displayed a hostile attitude towards the company and its officers does not deprive him of his legal rights as a stockholder under our statute. So far as his acts in connection with the rival corporation are concerned, there is nothing in the answer to show or from which the inference may be drawn that the information upon which he was acting was obtained by him from the books and records of the corporation by virtue of his being a stockholder therein. On the contrary, we think it satisfactorily appears that such information of its business methods and affairs was obtained by him before he left its employ and while he was acting as its general manager. The mere fact that by such examination he may be able to obtain information that will be of benefit to the rival company is not sufficient to deprive him of his statutory rights. When the time comes, if it appears that he is using his right of examination of the records and books of account of the appellant company for the purpose of ascertaining its secret formulas and business methods for the benefit of the rival corporation, it will be time enough to deal with that question. Until that time comes his rights as a stockholder under the statute ought not to be abridged. To hold otherwise would be to deprive stockholders in rival or competing corporations of their statutory rights, in violation of the express provisions of the statute and for no other reason than that they owned stock in rival or competing corporations.

In this connection it is to be borne in mind that appellee is a stockholder in this corporation and to that extent is interested in the proper conduct and management of its business and affairs and entitled to be informed as to how its business and affairs are being conducted; also that for years the company has been doing a prosperous business and has been a constantly growing concern until its business has grown from a company having but from 200 or 250 salesmen to one now having from 1200 to 1500, and that it has branch houses in several places in this country and in Canada. For several years preceding 1908 it paid large dividends on its stock, but since 1908, when appellee severed his connection with the company, it has paid no dividends on its stock whatever. Under these circumstances appellee may well be actuated with an honest desire to inquire into the manner of conducting its business and affairs with a view of ascertaining why no dividends are paid. To deprive appellee of his right to examine the affairs of the company would not only deprive him of a statutory right but perpetrate a legal wrong as well. Such examination should be made at such time or times and under such conditions as would not unduly hinder and embarrass the company in the conduct and management of its business.

It is further insisted that the petition is insufficient, in that it does not allege appellee made a proper application to the appellant company to examine its records and books, and that it conclusively appears that appellee has been at all times at liberty to examine the reports made by a disinterested auditor hired by the company. The petition alleges that in April, and again in May and July, 1914, appellee made written application to the company to examine its records and books of account and that on each occasion such permission was refused to him by the company. This was sufficient to show a demand and a refusal by the company. As to the other matters alleged, the statutes give a stockholder the right to examine the records and books of ac-

count of the corporation. This statutory right cannot be put off or defeated by the corporation hiring someone else to make an audit of its business and affairs. There is no merit in either of these contentions.

It is further insisted that the petition was insufficient for the reason that it was not properly verified. So far as we are advised from the record and the opinion of the Appellate Court, that question was not raised in that court and it is now too late to raise it here for the first time. Nor do we think the question properly arises on the record under the practice pursued in the lower court. W. T. Rawleigh and the W. T. Rawleigh Medical Company filed their general and special demurrers to the petition in the lower court. This was an admission of the truth of all matters well pleaded in the petition. The object of requiring a verification of the petition is to show the court that the facts therein stated are true. After such facts have been admitted by demurrer it is too late to raise the question as to the sufficiency of the verification to the petition. Such question can only be raised by motion to strike the petition for want of sufficient verification before joinder of issue of law or fact. *Bancroft* v. *Eastman,* 2 Gilm. 259; *Grand Lodge Brotherhood of Railroad Trainmen* v. *Randolph,* 186 Ill. 89.

Appellee also assigns cross-error on the action of the Appellate Court in ordering the costs of the appeal to be taxed to him. The matter of the taxation of costs on appeal is one which rests largely in the sound discretion of the court making such order. In the instant case the judgment of the lower court awarding the writ was erroneous in awarding appellee a larger measure of relief than he was entitled to under the showing made in this case. In order to correct this error in the judgment of the lower court it was necessary for appellants to prosecute their appeal to the Appellate Court, where the error in the judgment of the lower court was corrected. In such case we think there

was no error in that court taxing the costs on such appeal to appellee.

For the reasons given the judgment of the Appellate Court will be affirmed.      .      *Judgment affirmed.*