MOORE et al. v. ROCK CREEK OIL CORPORATION et al.

No. 1400–6023.

Commission of Appeals of Texas, Section B.

May 3, 1933.

Dorenfield, Foster & Fullingim, of Amarillo, for plaintiffs in error.

Underwood, Johnson, Dooley & Simpson, of Amarillo, for defendants in error.

LEDDY, Judge.

Plaintiffs in error were stockholders in the Rock Creek Oil Corporation. They made proper demand upon the president and secretary of said company to be permitted to examine its books and records. These officers of the company notified plaintiffs in error that they would permit them to examine such books and records upon certain specified conditions. The conditions named were clearly such as the company had no right to impose against stockholders seeking the statutory right of inspection.

The issuance of a writ of mandamus was sought in this proceeding to compel said corporation to grant plaintiffs in error the statutory right of inspection of its books and records.

Defendants in error's answer included a plea by which it sought to justify its refusal to permit said stockholders to examine the books and records of the company. In such plea it was averred that there existed a spirit of hostility on the part of M. E. Bates, E. K. Whitehead, and C. A. Leland, who were formerly members of the board of directors of said company, against Ed R. Mayer, the president of said corporation; that at the last annual meeting of the board of directors held in April, 1929, at an election for directors, Bates, Whitehead, and Leland were defeated for re-election as members of the board of directors; that such action increased the feeling between said parties and the officers of said corporation; that while these parties were not plaintiffs in this suit, they had instigated the bringing of the suit by the plaintiffs in error for the purpose of harassing, vexing, and annoying the officers of the company; that each of these men had been making attacks upon the character and integrity of the officers of the company, and that they desired to continue on the board of directors for the purpose of annoying and harassing said president in the discharge of his duties to the company; that said three former directors had secured the adherence of a small minority of stockholders, including plaintiffs in error, who instituted this suit; that the

plaintiffs in error were all partisans of said Bates and Whitehead in that they shared the feeling of unfriendliness and hostility toward the said Mayer; that they supported the efforts of said Bates, Whitehead, and Leland to remain on the board of directors, and that when they were defeated they became incensed against Mayer; and that in prosecuting this suit the plaintiffs in error are working in concert and pursuant to a common understanding with Bates and Whitehead.

It was further averred that the company had a full and complete audit of its affairs made regularly each year by a reputable and competent public accountant; that such audits have been full and complete and copies have at all times been on file at the office of the company, open to the inspection of all stockholders, including plaintiffs in error, and that printed data from said audits covering all the results and summaries thereof, and the balance sheets, and the profit and loss statements incorporated therein, had been regularly mailed each year to all of the stockholders, including the plaintiffs in error, and that the latter have at all times had the full benefit of the audits of the company and have had in their possession copies thereof.

It was charged that the true intent and purpose of the plaintiffs in error was to go through the form of making a so-called audit; that they were not actuated by any genuine desire to seek knowledge or information relative to the affairs of the company, but that their demand for such inspection proceeded from ulterior motives, that plaintiffs in error are acting in concert with Bates and Whitehead, and that they are ready to serve their desire, which is to secure something purporting to have the trustworthiness of a professional audit, in the hope and desire to find something or some way to use such audit to alarm other stockholders of the company and disturb their confidence and satisfaction in the management of the company without any real or just cause; that a part of their purpose is to gratify their enmity toward the said Mayer through this suit in order to keep up a state of agitation and demoralization among the general body of the stockholders by stirring up dissatisfaction, discontent, and distrust among the stockholders of the company, and to arouse general public doubt in the stability and soundness of the company in the belief that such purpose and activity will be hurtful and ruinous to the said Mayer.

The answer further set forth that the said Bates had theretofore procured a stockholder's license in the state of Colorado, and has dealt in the stock of said company and wishes to continue such practice, and by virtue of the instigation of the plaintiffs in error herein and the effects of this suit, she means to keep up a state of agitation and demoralization in the affairs of the company and thereby promote an unsettled market standing of

the stock of the company, which will facilitate dealing in the stock in her own interest, and the exploitation of the stock of the stockholders, and such activity is and will be altogether without regard to the effect that such conditions in the company are destructive to its best interests and the welfare of the general body of stockholders and the value of the stock.

It was further averred that during the time Bates and Whitehead were on the board of directors it became general and public knowledge that they were hostile to the president of the company, and that dissension existed in the directorate of the company, and such condition and public knowledge thereof reacted unfavorably to the company; that if the plaintiffs in error are permitted to have their own way by further annoying and harassing the company by this suit and their designs herein to prolong such vexatious interference in the affairs of the company, and with the personnel of the stockholders, and succeed, along with the said Bates, in their common hostile purpose herein, the standing and credit of the company and the value of its stock will be further depressed to the great pecuniary detriment of the company and its stockholders.

Plaintiffs in error demurred to the above answer. This demurrer was sustained by the trial court. They declined to amend, and the cause was tried upon an agreed statement as to the facts substantiating the allegations of plaintiffs in error's petition. Based upon such facts, the trial court awarded the writ of mandamus as prayed for.

Upon appeal by defendants in error to the Court of Civil Appeals, the judgment of the trial court was reversed and the cause remanded for another trial. 41 S.W.(2d) 501. The ground of reversal was that the trial court erred in sustaining the demurrer urged to the defendants in error's answer. Writ of error has been granted to determine the correctness of that ruling.

The question we are called upon to decide is whether the facts averred in defendants in error's answer constitute a defense to the statutory right accorded stockholders of this corporation to examine its books and records upon proper demand.

At common law the right of inspection was not an absolute one. Under this rule the stockholder was compelled to establish that the inspection was asked in good faith and for an honest purpose.

■■ The authorities are somewhat in conflict as to the absolute or qualified character of a stockholder's statutory right of inspection (Rev. St. 1925, art. 1328). The decided weight of authority, however, is that when the right is conferred by statute without restriction it is an absolute one. Pfirman v. Success Min. Co., Ltd., 30 Idaho, 468, 474,

166 P. 216; Powelson v. Tennessee Eastern Electric Co., 220 Mass. 380, 107 N. E. 997, Ann. Cas. 1917A, 102; People v. Keeseville, etc., Ry. Co., 106 App. Div. 349, 94 N. Y. S. 555; People v. Bowie (Sp. Sess.) 166 N. Y. S. 905; State ex rel. Doyle v. Laughlin, 53 Mo. App. 542; State ex rel. Spinney v. Sportsman's Park & Club Ass'n, 29 Mo. App. 326; Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St. 189, 56 N. E. 1033, 48 L. R. A. 732, 78 Am. St. Rep. 707; Foster v. White, 86 Ala. 467, 6 So. 88; Cotheal v. Brouwer, 5 N. Y. 562; Clawson v. Clayton, 33 Utah, 266, 93 P. 729; Venner v. Chicago City Ry. Co., 246 Ill. 170, 92 N. E. 643, 138 Am. St. Rep. 229, 20 Ann. Cas. 607; State ex rel. Costelo v. Middlesex Banking Co., 87 Conn. 483, 88 A. 861; Furst v. W. T. Rawleigh Medical Co., 282 Ill. 366, 118 N. E. 763; People v. Pacific Mail S. S. Co., 50 Barb. (N. Y.) 280.

■■■ It does not follow, however, that in every instance this right will be enforced by the courts. It must be borne in mind that the enforcement of the right is by mandamus. Such a writ is not issued as a matter of right, but in the exercise of a sound judicial discretion which allows the court to view other considerations than the mere legal right of the relator. This principle is well illustrated by the decision of our Supreme Court in Westerman v. Mims, 111 Tex. 29, 227 S. W. 178, 181. In that case the relator sought by writ of mandamus to compel the respondent secretary of state to instruct the county clerk of Galveston county to have the name of Aubrey Fuller printed on the official ballot for the November election as an independent candidate for district judge. It was made to appear that said respondent had fully complied with the election laws requisite to have his name placed upon the ticket as such candidate. In other words, he was seeking to enforce an undisputed legal right. It was disclosed, however, that the respondent Fuller had voted in the Democratic primary. He had taken a pledge to support all of the nominees of that primary. Under such circumstances the court declined to put into motion its legal machinery to aid the respondent to consummate his purpose to defeat a candidate whose nomination he had solemnly pledged himself to support. In denying the writ the court, speaking through Justice Greenwood, said:

"Our statute empowers this court to issue writs of mandamus 'agreeable to the principles of law regulating such writs.' Article 1526, Vernon's Sayles' Texas Civil Statutes. "Among the principles regulating the issuance of writs of mandamus, which cannot be regarded otherwise than as clearly settled, is one which is thus stated in section 1380 of Spelling's Extraordinary Relief:

" 'While the remedy by mandamus is not equitable, but strictly legal, yet by analogy to the principles prevailing in courts of equi-

ty it is a uniform requirement that the relator in seeking this remedy must come into court with clean hands.'

"To the same effect, see section 26, High's Extraordinary Legal Remedies."

The Supreme Court of Ohio in American Mortgage Co. v. Rosenbaum, 114 Ohio St. 231, 151 N. E. 122, 124, 59 A. L. R. 1368, in discussing the discretion vested in the court to issue a writ of mandamus to enforce a strict legal right of this character, said: "The principle involved in this case is not new, but, on the contrary, is very old, very simple, and very fully in accord with good sense and common honesty; that is to say, one may possess a legal right, unconditional in character, with respect to the enforcement of which he may avail himself of all legal remedies applicable thereto, and, still, if the results which must attend and follow the enforcement are such as will shock the conscience of a court of equity, that court, if asked to issue its mandatory injunction as an aid to such enforcement, should, in the exercise of a sound discretion, deny the application and leave the party to pursue his legal remedies. Extraordinary writs are issued by courts of equity to prevent and correct wrongs, but are not employed to promote wrongs."

The Supreme Court of the United States, in Turner v. Fisher, 222 U. S. 204, 209, 32 S. Ct. 37, 38, 56 L. Ed. 165, has declared a similar rule. Justice Lamar, speaking for the court, made this observation: "Mandamus * * * will not be granted in aid of those who do not come into court with clean hands," since the writ issues "to remedy a wrong, not to promote one."

■■ Where a stockholder seeks to enforce by mandamus the statutory right of inspection, he has made a prima facie case when he alleges his interest as a stockholder and the refusal of the corporation to grant him such right of inspection after proper demand therefor. It is not essential that he allege or prove that in seeking the issuance of such writ he is acting in good faith and for an honest purpose. The statute places no such restriction upon the right granted, and the court cannot do so.

■ But when the corporation pleads, and is able to establish by proof, a state of facts sufficient to convince the court that the stockholder is not seeking the information which might be revealed by the desired inspection for the protection of his interest as a stockholder, or that of the corporation, but that he is actuated by corrupt or unlawful motives, the court will not, by the issuance of its writ of mandamus, aid him to consummate such corrupt and unlawful purposes.

We are thus brought to a decision of the question as to whether the facts alleged in defendants in error's plea are sufficient to show that plaintiffs in error's request for the issuance of the writ of mandamus should be denied because it has been made to appear by the averments of the answer that they are not in court with clean hands.

■ In considering the sufficiency of defendants in error's answer, all of the allegations with reference to the injurious effect upon the corporation by the suit brought by plaintiffs in error must be eliminated. If plaintiffs in error's demand for an inspection of the books of the corporation should have been granted, it necessarily follows that they would be entitled to prosecute this suit to enforce the right thus denied, even though its bringing might have all of the injurious effects alleged. We shall therefore consider only those averments of the answer which are made the basis of the corporation's refusal of the plaintiffs in error's demand for inspection. Briefly summarized, they are as follows: (1) That there existed a spirit of hostility between plaintiffs in error and the officers of the company, and that the former, in seeking to ascertain the condition of the company's affairs, were in hopes of finding something which could and would be used to alarm other stockholders; (2) that the plaintiffs in error had been furnished full information as to the financial condition of the company through its annual financial statement and copies of annual audits made at its instance; (3) that the demand for inspection and the suit to enforce same were instigated by Dr. Bates for the purpose of depressing the market value of the corporation's stock in order to facilitate her dealing in the same as a stock broker.

■ The mere fact that stockholders seeking an inspection are on unfriendly terms with the company is no ground for denying their statutory right of inspection of the books of the corporation. Cobb v. Lagarde, 129 Ala. 488, 30 So. 326; Furst v. W. T. Rawleigh Med. Co., 282 Ill. 366, 118 N. E. 736; Meysenburg v. People, 88 Ill. App. 328; Ellsworth v. Dorwart, 95 Iowa, 108, 63 N. W. 588, 58 Am. St. Rep. 427.

■ Nor is it any reason for denying such examination that plaintiffs in error hope to find something alarming in the affairs of the company, which they intend to communicate to other stockholders. If in truth and in fact no alarming condition exists, presumably it will not be found through any examination made by plaintiffs in error. If there is existent anything in the financial affairs of the company which would be reasonably calculated to alarm the stockholders in general, we see no reason why plaintiffs in error could not properly communicate such fact to other stockholders. The stockholders of a corporation are the beneficial owners of the corporate property, and are therefore vitally

interested in knowing the true condition of its affairs. If a condition exists which is calculated to alarm the stockholders, they are legitimately entitled to know such fact, and there would be nothing improper should plaintiffs in error communicate the information thus obtained to other stockholders.

 Defendants in error are not entitled to defeat plaintiffs in error's statutory right of inspection by offering them the substitute of financial statements issued by the company or an auditor's report made at its instance. The right given the stockholders by the statute is an absolute one. They cannot be required to accept a substitute in the way of financial statements and auditor's reports which may be believed by the corporation's officers to be just as good as the statutory right of examination. The right thus granted by the statute cannot be bartered away by the officers of the corporation.

 The motive attributed to Dr. Bates of desiring to depress the market value of the corporation's stock so that she might, as a broker, deal more profitably in the sale of the same, cannot properly be charged against the plaintiffs in error even though it is averred that plaintiffs in error were acting under the instigation of Dr. Bates in making the demand for examination and bringing this suit. Dr. Bates was not one of the stockholders who demanded the inspection, nor is she a party to this suit. The motive actuating her cannot be fairly imputed to the plaintiffs in error. It is not charged that they will participate in any profits made by Dr. Bates in the sale of the company's stock. It is wholly incredible that the stockholders who made the demand for an examination of the company's affairs and brought this suit to enforce such demand were motivated in doing so to depress the market value of their own stock in the company in order to facilitate the sale of the corporation's stock by a third person.

Defendants in error's answer is largely made up of legal conclusions as to the motives actuating plaintiffs in error in their demand for the right of inspection of the corporation's books and records. It is our judgment that the facts alleged are not sufficient to show that plaintiffs in error are in court with unclean hands because actuated by corrupt or unlawful motives in seeking an examination into the company's affairs.

We therefore conclude the trial court's action in sustaining the demurrer to defendants in error's answer was proper, and that the Court of Civil Appeals erred in holding to the contrary.

We recommend that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

CURETON, Chief Justice.

The judgment of the Court of Civil Appeals is reversed and that of the district court affirmed as recommended by the Commission of Appeals.