CITIZENS ASSOCIATION FOR SOUND ENERGY (CASE), Appellant,

v.

David and Barbara BOLTZ and Joe Cook, Appellees.

No. 07–93–0226–CV.

Court of Appeals of Texas, Amarillo.

July 26, 1994.

Opinion Granting Rehearing in Part and Modifying Judgment; Overruling Rehearing in Part Nov. 1, 1994.

Rehearing Overruled Nov. 28, 1994.

Blalack & Williams, Randy Roberts, Dallas, for appellant.

Law Offices of Edward B. Cloutman, III, Edward B. Cloutman, Dallas, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

BOYD, Justice.

Appellant Citizens Association for Sound Energy (CASE) brings this appeal from a summary declaratory judgment in favor of appellees David Boltz, Barbara Boltz, and Joe Cook. In its judgment, the trial court overruled CASE's motion for partial summary judgment and, in granting appellees' motion, decreed that appellees were entitled to inspect and copy some of CASE's records by virtue of Articles 1396–2.23 and 1396–2.23A of the Non–Profit Corporation Act[1] (the Act). Parenthetically, although Earl and Alma Burnham, Charles and Betty Brink, Charles and Betty Crabtree, and Kay C. Taebel were originally listed as parties plaintiff in the suit, upon their motion they were dismissed and are no longer parties to

1. Tex.Rev.Civ.Stat.Ann. art. 1396–1.01. to –11.01. (Vernon 1980 & Supp.1994).

the suit or to this appeal. For the following reasons, we affirm in part and reverse in part.

Section A of Article 1396–2.23 of the Act provides, in general terms, that a non-profit corporation must keep correct and complete books and records of account, of the minutes of the proceedings of its members, board of directors and committees, and of the names and addresses of its members that are entitled to vote. Section B of the statute provides that "[a]ll books and records of a corporation may be inspected by any member, or his agent or attorney, for any proper purpose at any reasonable time." [2]

Article 1396–2.23A addresses, in more detail, the manner in which the financial records of a non-profit corporation are to be maintained. It provides for the preparation of an annual financial report and requires that all records, books, and reports be kept for at least three (3) years after the closing of each fiscal year. The article also provides for a criminal penalty for failing to comply with the statute and enumerates certain types of corporations that are exempt from the statute. Section C of the article provides that the records be kept at the registered office or the principal office of the corporation and "shall be available to the public for inspection and copying there during normal business hours."

In eleven points, CASE challenges the trial court's summary declaratory action. These points can be grouped into seven arguments: (1) the relevant provisions of the Act are unconstitutional; (2) appellees are not members of the class entitled to inspection of corporate records under Article 1396–2.23 of the Act; (3) CASE is exempt from the provisions of Article 1396–2.23A of the Act; (4) there were material fact issues as to whether appellees had already been given the opportunity to inspect the records they were entitled to inspect and whether they were entitled to inspect any additional records; (5) appellees did not show they were entitled to

the relief they sought as a matter of law; (6) Article 1396–2.23 of the Act does not authorize the copying of corporate records; and (7) the judgment is not sufficiently definite to define and protect the rights of the parties.

CASE's primary focus, since its inception, has been to monitor and protect the safety and costs of the Comanche Peak nuclear power plant. CASE has participated in public hearings, filed public comments with regulatory agencies, and engaged in other activities related to the licensing and construction of the Comanche Peak power plant. In 1988, as a result of those activities, the president of CASE executed a settlement agreement with Texas Utilities, the operator of the plant, whereby Texas Utilities was to, inter alia, pay CASE, its president, and others (generally referred to as the Whistleblowers) a total of ten million dollars.

From 1980 through the time of the settlement, appellees David and Barbara Boltz were officers and members of the board of directors of CASE. Assertedly because they were concerned with CASE's handling of the settlement with Texas Utilities, viz., CASE's efforts to prevent public disclosure of the settlement terms and its commitment to participate in future regulatory actions, the Boltzes resigned as officers and members of the board on July 19, 1988. Their resignations were accepted on July 29, 1988.

By letter dated January 5, 1989, the Boltzes requested information concerning the distribution of money paid to CASE as a result of the 1988 settlement. By letter dated March 31, 1989, the Boltzes received a computer printout summary from CASE; however, the summary was not satisfactory to the Boltzes. On April 25, 1989, the Boltzes, through their attorney, made an additional written request to inspect and copy those records to which the right of inspection under Articles 1396–2.23 and 2.23A applied. Together with their attorney, the Boltzes were allowed to inspect several of CASE's records on June 9, 1989. They then request-

---

**2.** Section B was amended in 1993, effective January 1, 1994, to read:

A member of a corporation, on written demand stating the purpose of the demand, has the right to examine and copy, in person or by

agent, accountant, or attorney, at any reasonable time, for any proper purpose, the books and records of the corporation relevant to that purpose, at the expense of the member.

ed copies of each of the documents they inspected. On June 14, 1989, the Boltzes were notified that they would not be supplied the copies they had requested but they could receive copies of monthly summaries. On July 7, 1989, CASE provided copies of two financial reports but continued to refuse to furnish the other copies requested. As a result, this suit was filed on July 17, 1989.

As this appeal concerns a summary judgment, our review must be conducted in accordance with the litany of standards articulated in *Nixon v. Mr. Property Management Company*, 690 S.W.2d 546 (Tex.1985). Those standards are:

1. The movant has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue, evidence favorable to the non-movant will be taken as true;

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Id.* at 549.

In its first two points, CASE challenges the constitutionality of the inspection provisions of Articles 1396–2.23 and 1396–2.23A, devoting the larger portion of its brief to this question. CASE argues that an inspection under these provisions has an impermissible chilling effect on its ability to obtain or retain members and gather information from confidential informants, described as absolutely essential to its effectiveness. For reasons later expressed, we believe a material fact question exists as to the applicability of Article 1396–2.23A; therefore, we limit our discussion to the constitutionality and the applicability of Article 1396–2.23.

■ Throughout CASE's extended discussion of the unconstitutionality of this statute,

it fails to acknowledge the existence of the protective order issued by the trial court.[3] This order provides, inter alia, that appellees "shall not be entitled to examine or copy any records revealing the identities of CASE's members, contributors, consultants, or confidential sources of information." The order further provides that appellees and their attorneys may not disclose the contents of any of the records examined or copied. CASE has made no allegation, and there is nothing in the record, that indicates a lack of enforceability of the order. Given the existence of the protective order, we hold that the statute, as applied by the trial court, is constitutional and is not subject to the vises argued by CASE.[4] Accordingly, CASE's first and second points are overruled.

In its third point, CASE contends the evidence conclusively establishes that appellees are not members of CASE. In the alternative, CASE argues in its fourth point that there was a fact question concerning appellees' membership. If appellees were not members, they would have no right of inspection under Article 1396–2.23. CASE has failed to cite any authority or discuss the relevant facts in its attenuated presentation of the points in its brief. Failure to comply with the minimum briefing requirements of Rule 74(f) of the Texas Rules of Appellate Procedure raises a question as to whether these points have been waived. *New York Underwriters Ins. v. State Farm*, 856 S.W.2d 194, 204 (Tex.App.—Dallas 1993, no writ); *Board of Comm. of Beaver County v. Amarillo Hospital Dist.*, 835 S.W.2d 115, 122–23 (Tex.App.—Amarillo 1992, no writ). However, because of the nature of this appeal and the fact that we can determine the thrust of CASE's challenge under these points, we will consider them.

---

3. In its initial partial summary judgment, the trial court overruled CASE's motion for partial summary judgment and granted appellees' motion for inspection without awarding attorney's fees. In the judgment, which was later adopted and incorporated in the final summary judgment giving rise to this appeal, CASE was directed to prepare a protective order. The protective order was approved and incorporated in the final judgment.

4. Because this order not only prevents further disclosure of the information obtained but also prevents appellants from learning the identities of CASE's members, contributors, consultants, or informants, it does not present the issues raised in *Ex parte Lowe*, 887 S.W.2d 1, 2–3 (Tex.1994); or *Tilton v. Moye*, 869 S.W.2d 955, 956 (Tex. 1994).

■ CASE's challenges must fail as to the Boltzes. When the Boltzes resigned as officers and directors of CASE and when they requested an inspection of the corporate records, CASE's bylaws contained similar provisions. The earlier bylaws provided:

> Members shall be accepted throughout the year by fulfillment of the current requirement (sic) of the corporation for paid or worker members and by being accepted by the Board of Directors.

Effective February 8, 1989, the bylaws were amended and defined members as:

> [T]hose persons who have paid and are current in their annual dues to the Corporation, which annual amount shall be set by resolution of the Board of Directors, and who have been accepted by the Board of Directors of the Corporation are referred to herein as the "Members." Annual dues may be paid at any time during the calendar year, and when accepted, shall entitle that person to be a Member through the last day of the twelfth month following the date of such acceptance.

It is undisputed that the Boltzes were members of CASE through July 18, 1988. In their June 19, 1988 resignation letter, the Boltzes specifically asked the Board of Directors to "accept our joint resignation both from the Board and from our positions as C.A.S.E.'s Vice–President and Secretary, effective immediately." By its terms, the letter was limited to the positions named therein and did not amount to a membership resignation.

There is no summary judgment evidence that the Boltzes' membership was terminated by any bylaw provision. Attached to CASE's motion for partial summary judgment are checks of the Boltzes and others which were tendered to CASE for membership renewal. The Boltzes' check is dated June 12, 1989. As indicated above, the bylaws provide that membership fees are on an annual basis. That being so, the Boltzes' previous membership renewal must have been on or about June 1988. Absent any evidence that the Board of Directors had taken any action to terminate the Boltzes' membership, and inasmuch as the record does not show any bylaw provision authorizing the board to terminate

an existing membership, the record is sufficient to show that the Boltzes were members when they made the request to inspect and copy CASE's records under Article 1396–2.23. That being so, CASE's refusal to renew the Boltzes' membership in August 1989 has no effect upon their membership status when the initial inspection request was made in April 1989. Appellant's third and fourth points must be overruled as to appellees David and Barbara Boltz.

There is, however, no evidence in this record as to whether or not appellee Joe Cook was a member of CASE. That being so, we must overrule CASE's third point but sustain its fourth point as far as Cook is concerned.

■ In its fifth and sixth points, CASE argues that the evidence conclusively establishes that it is exempt from the provisions of Article 1396–2.23A or, in the alternative, that a fact question exists as to whether it is entitled to such an exemption. Article 1396–2.23A, of course, relates to the maintenance and disclosure of financial records of non-profit corporations. As we have noted above, its relevant particulars require non-profit corporations to keep true and accurate financial records, to make an annual report of financial activity of the corporation, to keep such records for a period of three years after the closing of each fiscal year, and to make such records available "to the public" for inspection and copying.

In claiming that it is exempt from the provisions of the article, CASE relies upon the exemption contained in section (E), subsection (7) for "an organization whose charitable activities relate to public concern in the conservation and protection of wildlife, fisheries, and allied natural resources." Tex. Rev.Civ.Stat.Ann. art. 1396–2.23A(E)(7) (Vernon 1980).

In support of its exemption claim, CASE relies upon the affidavits of its president, Juanita Ellis, as well as the purposes clause of its articles of incorporation. The purpose clause of CASE's articles of incorporation refers to "the preservation of the self-perpetuating ability of as many life species as possible." In her affidavit, Ellis discusses CASE's concern over the "far-reaching effect

which a nuclear accident could have, including the impact on wildlife and natural resources." In a supplemental affidavit, Ellis refers to CASE's participation in a report evaluating the environmental protection plan of the Comanche Peak plant and notes that the corporation had been involved with the preparation of the report "[s]ince the filing of CASE's Response to Plaintiffs' Motion for Summary Judgment." Accepting this last statement as true, it is clear that these particular activities of CASE occurred long after the Boltzes' request for information under Article 1396–2.23A. Therefore, the supplementation is not probative as to whether the corporation was exempt from the statute when the Boltzes requested corporate information in 1989.

Although we do not agree that the summary judgment evidence is sufficient, as a matter of law, to show CASE's exemption under the statute, we agree that it is sufficient to raise a fact question concerning its eligibility for the exemption. Accordingly, although we overrule CASE's fifth point, we must sustain its sixth point.

■ Article 1396–2.23(B) requires that a member's right to inspect corporate records must be for a "proper purpose." In its seventh point, CASE contends that a material fact issue exists as to whether the Boltzes sought to examine the corporate record for a "proper purpose" within the purview of the statute.

There is a dearth of cases construing the meaning of the term "proper purpose" as used in this statute. However, there is an analogous provision contained in Article 2.44(C) of the Texas Business Corporation Act (TBCA) and its predecessors. As a member in a nonprofit corporation is sufficiently similar to a shareholder in a for-profit corporation, we find the cases construing the TBCA's "proper purpose" phrase useful and persuasive.

■ As evidence of a lack of "proper purpose," CASE initially points out the antagonism existing between Ellis and the Boltzes.

We fail to see how any such hostility would render the Boltzes' motive for wanting an inspection improper, nor do we believe that the mere fact that Ellis and the Boltzes were on unfriendly terms was indicative of an improper purpose. In *Moore v. Rock Creek Oil Corp.*, 59 S.W.2d 815 (Tex.Comm'n App. 1933), the commission also rejected a corporation's argument that the animosity between the corporation and the stockholders seeking the right of inspection was a ground for denying an examination of the corporate books. *Id.* at 818. The statute involved in *Moore* did not contain a "proper purpose" provision, *see* Tex.Rev.Civ.Stat. art. 1328 (1925) (repealed 1961); however, the commission's reasoning aids us in determining whether appellees sought to inspect the books for a "proper purpose" within the purview of the present statute.[5]

As additional authority for its position that "inspection of corporate records will not be allowed for speculative purposes," CASE cites 18A Am.Jur.2d *Corporations* § 382 (1985). An examination of that authority, however, reveals that it does not cite any Texas authority for that proposition.

■ In *Chavco Investment Co. v. Pybus*, 613 S.W.2d 806 (Tex.Civ.App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.), the court held that the right of a stockholder to inspect corporate books, although not absolute, is a valuable right which cannot be circumvented by a mere conclusion that an improper purpose exists. *Id.* at 809. That being so, the court held that mere conclusory statements such as the existence of bad faith, improper purpose, or a disagreeable purpose are not sufficient to raise a fact issue as to proper purpose; rather, specific facts must be alleged showing an improper motive. Although *Chavco* involved a for-profit corporation and the holding was in the context of an application for mandamus, the surrounding circumstances are sufficiently similar to those here to make the court's reasoning persuasive and applicable. Therefore, we hold that once the Boltzes established that they were members of CASE under the by-

---

5. In *Moore*, the question before the commission was whether the friction between the corporation's officers and the shareholders seeking an inspection demonstrated a "corrupt purpose" in seeking the inspection so as to prevent the granting of mandamus relief.

laws, they had demanded their right of inspection under Article 1396–2.23, that the request was for a proper purpose, and that the corporation refused to grant such request, that in order to avoid an adverse summary judgment, it was CASE's burden to allege specific facts showing a lack of proper purpose and support those allegations with summary judgment evidence. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). This was not done. CASE's seventh point is overruled.

■ In its eighth point, without citation of relevant authority, CASE argues the trial court erred in its judgment because appellees had already been "given access to all of the records to which they were entitled." Parenthetically, CASE's use of the phrase "to which they were entitled" implies that there were additional records of the corporation to which the Boltzes were not given access because CASE felt they were not covered by the right of inspection. Although section (A) enumerates specific records which must be maintained by the corporation, the right of inspection under section (B) is not limited to those records. The text of section (B) in effect at the time of the Boltzes' request clearly provided that the right of inspection extended to "[a]ll books and records of a corporation...." [6]

■ Additionally, even accepting CASE's position that it had previously permitted an inspection of some, or even all, of its records, we note that Article 1396–2.23(B) does not limit or specify the number of times a member may inspect corporate records other than that the inspection be "for any proper purpose at any reasonable time." In the absence of a showing that the right of inspection has been used by a member for harassment or to impede the management of the corporation, the right of inspection is not limited in number and certainly not to only one inspection. *See Smith v. Trumbull Farmers Gin Co.*, 89 S.W.2d 829, 830 (Tex. Civ.App.—Waco 1936, no writ).

■ There is no evidence in this record that the Boltzes' requests have been repeated in such numbers as to indicate a harassment scheme or to impede the management of the corporation. Indeed, under the evidence before us, it appears that only one such inspection has occurred. Similarly, the furnishing of a financial statement of the corporation in lieu of the original financial records, as was done here, is not sufficient to satisfy a right to inspect the corporate books. *Moore*, 59 S.W.2d at 818. CASE's eighth point is overruled.

Repeating the arguments presented in points four and six, CASE asserts, in its ninth point, that the Boltzes' affidavits submitted in support of their motion for summary judgment are incompetent for the reason that they are based on "subjective conclusions, opinion, impressions and speculation." As we have determined that a fact question exists concerning CASE's entitlement to an exemption from Article 1396–2.23A, we address this argument only as it applies to the trial court's determination that the requirements of Article 1396–2.23(B) were met.

■ In order to be entitled to a summary judgment declaring their entitlement to the benefits of this statute, the Boltzes were required to establish the absence of a material question of fact as to their request to inspect the corporate records, the proper purpose of the request, their membership in CASE at the time of the request, and the corporation's refusal to allow an inspection. The affidavits of the Boltzes set out in some detail the basis for their concern about how CASE was handling the money from the settlement with Texas Utilities. As noted above, the better view in Texas is that once a stockholder, or a member, has established that his right of inspection for a proper purpose has been denied, the corporation has the burden of proving that the purpose of the inspection is improper or, in a summary judgment context, that a fact question exists as to the existence of an improper purpose. *See* James L. Young, *Texas Law on Stock-*

---

**6.** Effective January 1, 1994, the current text of 1396–2.23(B) limits the right of inspection to "the books and records of the corporation rele-

vant to [the] purpose [of the inspection]." Tex. Rev.Civ.Stat.Ann. art. 1396–2.23(B) (Vernon Supp.1994).

*holder Inspection Rights: How Does It Stack Up Against Delaware and the Model Business Corporation Act,* 40 Sw.L.J. 845, 856 (1986). Considering the predisposition of the law in favor of allowing reasonable inspections of corporate books and records and the difficulty of showing a proper purpose, the subjective nature of parts of the Boltzes' affidavits does not make them incompetent to establish a proper purpose.

■ However, establishing the Boltzes' membership at the time of their request is necessarily more fact specific. In determining whether the summary judgment evidence was sufficient on this issue, the trial court could consider not only the Boltzes' affidavits avowing their continued membership through the time of their request, but also the evidence submitted by CASE in support of their motion for partial summary judgment. *Woods v. Applemack Enterprises, Inc.,* 729 S.W.2d 328, 331 (Tex.App.—Houston [14th Dist.] 1987, no writ). This evidence included the Boltzes' letter resigning as officers and directors but not as members, CASE's articles of incorporation defining the qualifications for membership, and Juanita Ellis's August 12, 1989 letter rejecting the Boltzes' attempt to renew their membership some four months after the request for inspection had been made.

In her affidavit in support of CASE's motion for partial summary judgment, Ellis states that "[n]one of the [appellees] is a current member of CASE," and avers that the memberships of appellees expired prior to their attempt to renew their memberships in 1989. However, that affidavit does not bear on the question of whether the Boltzes were members on April 25, 1989, the date of their inspection request. Inasmuch as the Boltzes' status at the time of their request is the matter at issue, their status on the date of the motion for summary judgment is immaterial. CASE's ninth point is overruled.

In its tenth point, without citation of authority beyond the statute itself, CASE assigns error to that part of the trial court's order permitting the Boltzes to make copies of the records covered by Article 1396–2.23. CASE points out that, unlike Article 1396–2.23A(C) which specifically authorizes "in-spection and copying" of the records made available under that article, section (B) of Article 1396–2.23 only provides for the inspection of the records within its purview. Based upon the different wording of the statutes, CASE argues the legislature did not intend to authorize the copying of records covered by Article 1396–2.23.

■ Subsequent to the trial court's judgment, the legislature amended the language of Article 1396–2.23(B) to specifically include the right to make copies, at the member's expense, of records inspected by virtue of that article. Act of June 16, 1993, 73rd Leg., R.S., ch. 733, § 12, 1993 Tex.Gen.Laws 2873. As noted in the comment of the bar committee, the change in the language was "to clarify that the books and records that may be inspected must be relevant to that purpose, and that copies may be made at the member's expense." Tex.Rev.Civ.Stat.Ann. art. 1396–2.23(B) Comment of Bar Committee–1993 (Vernon Supp.1994).

Even though the new provision did not become effective until January 1, 1994, the statement of the bar committee that the amendment was in clarification rather than in substance compels us to conclude that the trial court did not err in ordering copies to be made of the corporate records. CASE's tenth point is overruled.

■ Finally, we address CASE's eleventh point of error in which it asserts the trial court judgment is "not sufficiently definite and certain to define and protect the rights of the parties." More specifically, CASE contends the judgment does not define which documents may be inspected, which documents may be copied, and which documents are covered by which statute.

As we have sustained CASE's sixth point of error challenging the applicability of Article 1396–2.23A and its fourth point of error concerning Joe Cook, our discussion is limited to the relief accorded the Boltzes under Article 1396–2.23. We conclude that an examination of the Boltzes' motion for summary judgment, the trial court's order granting the summary judgment and the statute make clear the compliance required of CASE under the judgment.

In their motion for summary judgment, the Boltzes sought a judgment declaring them "entitled under [Articles 1396–2.23 and –2.23A] to inspect and copy all documents requested from [CASE]." The trial court granted the motion including "all relief sought thereby" subject to its September 30, 1992 protective order. When read together with the provisions of the protective order and the Article 1396–2.23(B) language extending a member's right of inspection to "*all* books and records of a corporation," (emphasis added), and considering our interpretation that the right to inspect includes the right to copy at the member's expense, the judgment is sufficiently definite.

Parenthetically, our sustention of CASE's sixth point and our holding that a fact question exists as to whether CASE might be entitled to an exemption under Article 1396–2.23A does not require reversal of the summary judgment insofar as it applies to the Boltzes. Article 1396–2.23A, by its terms, applies to the *public's* right to inspect the financial records and annual reports of a nonprofit corporation subject to the exemptions provided in that statute. *See* Tex.Rev.Civ. Stat.Ann. art. 1396–2.23A Comment of Bar Committee (Vernon 1980) (emphasis added). On the other hand, Article 1396–2.23, by its terms, applies to a member's right of inspection. Since we have held the summary judgment evidence was sufficient to establish the Boltzes' status as members of CASE at the time the inspection request was made, that is the applicable statute. That being the case, the existence of a fact question in connection with an exemption under Article 1396–2.23A is immaterial and does not require reversal of the judgment. *Borg–Warner Acceptance Corp. v. C.I.T. Corp.,* 679 S.W.2d 140, 144 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

That portion of the trial court's judgment granting the Boltzes the relief they sought is affirmed. The portion of the judgment purporting to grant Joe Cook such relief is reversed and that portion of the suit is severed and remanded to the trial court. Tex. R.App.P. 81(c).

---

*ON MOTION FOR REHEARING*

November 1, 1994

After careful examination of CASE's motion for rehearing, we remain convinced that our original disposition of this case is correct, with the exception of the modification set out below. However, we will discuss portions of CASE's motion in further explication of our disposition of the case.

■■■■■ Initially, CASE challenges our holding in our original opinion that Article 1396–2.23 of the Texas Revised Civil Statutes Annotated (Vernon 1980 & Supp.1994) is constitutional as applied by the trial court. On original submission, CASE challenged the constitutionality of Article 1396–2.23 "as applied." It now argues, however, that "either the statute is constitutional or it is not." In making this contention, CASE fails to recognize the long line of authority from the courts of this state, as well as the federal courts, which applies the rules of standing to constitutional challenges to statutes.[1] *Broadrick v. Oklahoma,* 413 U.S. 601, 612, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973); *Texas Ass'n of Business v. Air Control Board,* 852 S.W.2d 440, 444 (Tex.1993); *Santikos v. State,* 836 S.W.2d 631, 633 (Tex.Crim.App.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 600, 121 L.Ed.2d 537 (1992). These rules require that a party show that the challenged statute is unconstitutional as to him and his particular situation. *Breeze v. Breeze,* 707 S.W.2d 298, 300 (Tex.App.—Fort Worth 1986, writ dism'd w.o.j.). A corollary of that proposition is that it is not sufficient to show that the statute might be unconstitutional in another situation. *Nelson v. Krusen,* 678 S.W.2d 918, 923 (Tex.1984); *Breeze,* 707 S.W.2d at 300; *see also McKinney v. Blankenship,* 154 Tex. 632, 282 S.W.2d 691, 695 (1955). Even assuming that CASE has associational standing to assert the rights of its members, *see Texas Dept. of Mental Health v. Petty,* 778 S.W.2d 156, 165 (Tex.App.—Austin 1989, writ dism'd w.o.j.), the trial court's protective order prevents CASE's members from suffering any

---

1. Although many of these cases discuss standing as it concerns a plaintiff's challenge to a statute, the principles are equally applicable to a defendant who has raised a constitutional challenge as an affirmative defense.

injury from the application of Article 1396–2.23. Although there is nothing to show that CASE was authorized to assert the rights of nonmembers (the contributors, consultants, and informants), the court's order serves to prevent injury to the rights of those individuals as well.

 We recognize the exception to the traditional requirements of standing which allows a challenge to the facial validity of a statute where its very existence has a chilling effect on First Amendment rights. *Broadrick*, 413 U.S. at 612, 93 S.Ct. at 2915. However, the overbreadth analysis allowed by this exception is not applied in every case where First Amendment rights are implicated. Nor is it applied where First Amendment rights will not suffer if the constitutionality of the statute is litigated on a case by case basis. *Clements v. Fashing*, 457 U.S. 957, 972 n. 6, 102 S.Ct. 2836, 2848 n. 6, 73 L.Ed.2d 508 (1982). We believe that the above doctrine is applicable in the instant case and, as a result, hold that the rule of standing is applicable to this case.[2]

 Appellees next challenge our affirmance of the trial court's finding that the summary judgment evidence revealed the absence of a material question of fact as to the Boltzes' membership at the time of their request for inspection. In addition to our analysis of appellant's third and fourth points on original submission, which we believe to be correct, there is an additional reason why appellant's challenge must fail. In opposition to the Boltzes' motion for summary judgment and supporting affidavits showing that they were members of CASE and entitled to the benefits of Article 1396–2.23, appellees filed a response and its own motion for summary judgment. In that motion, appellees asserted, as relevant here, that (1) "[CASE] denies that [the Boltzes] *are* members," (2) "[the Boltzes] are not *current* members of CASE," (3) "none of the Plaintiffs are *current* members of CASE," and (4) "a material issue exists [as to] [w]hether Plaintiffs *are* member (sic) of CASE." (emphasis added).

Regardless of whether CASE intended to raise the question of the Boltzes' membership at the time of their request for inspection, it is clear that it failed to raise the issue in its motion for summary judgment or its response to the Boltzes' motion. The only question raised by these documents was the irrelevant issue of the Boltzes' membership at the time the motions were made. Issues not expressly set out in a motion, an answer, or other response shall not be considered on appeal as grounds for reversal. Tex.R.Civ.P. 166a(c).

CASE next contends that application of our original holding to paragraph two of the trial court's protective order permits the Boltzes to inspect CASE's financial activities through the year 1992.[3] As paragraph two is directed at the inspection rights provided by Article 1396–2.23A and because we have held that a question of fact exists as to CASE's entitlement to an exemption under that article, its position to that extent is well taken and that portion of the motion for rehearing granted. We have examined CASE's remaining challenges to our original opinion and find that they are adequately addressed in that opinion. With the exception stated above, appellant's motion for rehearing is overruled.

Accordingly, the portions of the trial court judgment pertaining to paragraph two and purporting to grant Joe Cook relief are severed and reversed and remanded to the trial court. The remainder of the judgment after the severance of these portions is affirmed. Our original judgment dated July 26, 1994 is withdrawn.

---

2. Even when applied, the overbreadth analysis does not demand that a statute "be stricken for marginal prospects of unconstitutional application." *Ferguson v. Estelle*, 718 F.2d 730, 734 (5th Cir.1983).

3. Paragraph two provides:

2. Plaintiffs David and Barbara Boltz and Joe Cook shall be entitled to inspect the books and records of financial activities and annual reports of the financial activity of CASE for the years 1988, 1989, 1990, 1991 and 1992.