# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00563-CV

## In re Elusive Holdings, Inc.

## ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## O P I N I O N

Relator Elusive Holdings, Inc. seeks mandamus relief from the trial court's order that permitted real party in interest Jacob White to inspect and copy certain books and records of Elusive's. Elusive contends that the court abused its discretion by granting the permission to White without first conducting a jury trial on the contested issue of whether he had a "proper purpose" in seeking to inspect the books and records, *see* Tex. Bus. Orgs. Code § 21.218(b). We conditionally grant relief.

## BACKGROUND

White was Elusive's chief operating officer, but Elusive fired him in August 2019. He was and still is a shareholder. Soon after it fired him, Elusive sued White for breach of contract, breach of fiduciary duty, misappropriation of trade secrets, and conversion. Among Elusive's allegations is that White created a competing business not long before his firing and took confidential, proprietary materials from Elusive, and refused to return them, to help get his new business off the ground. Elusive's suit involves other claims, counterclaims by White, and other parties, none of which we need to recount here.

With Elusive's suit pending, White "requested the 'books and records' of Elusive for" what he alleges is "a proper purpose, pursuant to Tex. Bus. Orgs. Code § 21.218." Elusive resisted his request, so he filed within Elusive's suit a petition for writ of mandamus, seeking to "compel[] Elusive to permit the requested inspection and copying." Elusive then filed an amended answer, in which it alleged that White had not requested the books and records for a proper purpose and that he had improperly used information from a prior examination; a jury demand; and a "Response to Defendant's Petition for Writ of Mandamus" (Response). Following a hearing, the trial court signed an "Order Granting Jacob White's Application for Mandamus – Books and Records," permitting him "to inspect and copy [certain] books and records of" Elusive's. In its order, the court stated that "Elusive has failed to identify specific facts that dispute White's identified proper purposes" for the books and records. Elusive then filed this original proceeding.

## STANDARD OF REVIEW

Mandamus is an extraordinary remedy. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). It is available only when the relator has shown that the trial court abused its discretion and that he lacks an adequate remedy by an appeal. *See id.* at 839. A trial court abuses its discretion when its decision results from a failure "to analyze or apply the law correctly." *Id.* at 840.

## DISCUSSION

I.    **Elusive lacks an adequate remedy by appeal after final judgment to challenge the trial court's order.**

Elusive contends that it lacks an adequate remedy by an appeal because "once its records have been disclosed, the knowledge improperly gained by a shareholder cannot thereafter be undone." In an original proceeding over a similar order, the Fifth Court of Appeals said,

2

> Requiring [relator corporation] to wait until after trial on the merits, and after inspection, to pursue its complaint that it was wrongfully denied a jury trial would cause it to lose the remedy it seeks. This Court would be unable to cure the error because, even were we to rule [that relator corporation] was entitled to a jury trial, the inspection would have been done and the issue moot. . . . Thus, we conclude there is no adequate remedy at law from the order in this case and writ of mandamus is the only available remedy.

*In re Dyer Custom Installation, Inc.*, 133 S.W.3d 878, 883 (Tex. App.—Dallas 2004, orig. proceeding) (citing *Uvalde Rock Asphalt Co. v. Loughridge*, 425 S.W.2d 818, 820 (Tex. 1968) (orig. proceeding)). So too here. We hold that Elusive lacks an adequate remedy by appeal. Therefore, whether Elusive is entitled to mandamus relief turns on whether the trial court abused its discretion.

**II.     The trial court abused its discretion by entering the order without affording Elusive its jury-trial right.**

A shareholder enjoys the right to examine and copy certain records of the corporation in which the shareholder owns shares. That right exists by statute, *see* Tex. Bus. Orgs. Code § 21.218(b), and at common law, *see Texas Infra–Red Radiant Co. v. Erwin*, 397 S.W.2d 491, 493 (Tex. App.—Eastland 1965, writ ref'd n.r.e.). A shareholder may press that right through a civil action for mandamus in a trial court. *Uvalde Rock Asphalt*, 425 S.W.2d at 820. Such a mandamus action "is a civil suit and is generally regulated by the same rules of procedure as other civil actions." *Id.*

Section 21.218(b) conditions the shareholder's right on the shareholder's stating a "proper purpose" for the demand to examine and copy. The resisting corporation enjoys the right to a jury trial on "proper purpose" under certain conditions, including that it has pleaded facts sufficient to raise an issue on "proper purpose":

3

Although the right to a jury trial does not exist in all situations where mandamus is applicable, it does exist in the situation where a corporation, in resisting a stockholder's attempt to inspect the books and records, raises by its pleadings a fact issue over whether the stockholder has a proper purpose for wanting to see the books.

*Id.*; *see also Accounting Search Consultants, Inc. v. Christensen*, 678 S.W.2d 593, 595 (Tex. App.—Houston [14th Dist.] 1984, no writ) (citing *Uvalde Rock Asphalt* and noting resisting corporation's "entitle[ment] to a jury's determination of the contested factual issue of whether the shareholder had a proper purpose in demanding to inspect the books"); *accord Guaranty Old Line Life Co. v. McCallum*, 97 S.W.2d 966, 968 (Tex. App.—Dallas 1936, no writ).

In this proceeding, Elusive contends that the trial court abused its discretion by entering the order because the issue of White's "proper purpose" in seeking the books and records was "an issue to be resolved by a jury trial, rather than summarily by the Trial Court." Elusive argues that in its Second Amended Original Petition (its live petition before the trial court) and the Response and its attachments, it alleged facts sufficient to raise an issue on "proper purpose."

Whether a corporation has pleaded facts sufficient to raise an issue on "proper purpose" has not often been litigated, but the few existing precedents are instructive in this case. The corporation in *Uvalde Rock Asphalt* pleaded facts sufficient to raise a "proper purpose" issue by alleging facts showing "a long but disagreeable relationship between the" shareholder and the corporation and that the shareholder's purposes for the demand were in reality "to obtain a competitive advantage," "to continue a program of studied harassment of" the corporation, and to force it either to buy out the shareholder "at a grossly inflated price" or to sell him assets "at a grossly inadequate price." 425 S.W.2d at 819–20. Reaching a similar conclusion but postured after an evidentiary hearing on the issue, the court in *Dyer Custom Installation* concluded that

4

the corporation there had raised a fact issue on "proper purpose" in part through testimony at the hearing about the shareholder's past acts against the corporation, including when he was its president:

> Two months prior to the request, Dyer resigned as president of the corporation. Thus, he had access to all the documents requested until the time he resigned. DCI alleged Dyer wanted access to the information to (i) gain a competitive advantage in that particular marketplace, (ii) harass DCI and its officers and directors in an attempt to gain control of the company or dissolve it, or (iii) force DCI to purchase his stock at a grossly inflated price or to force all other shareholders to sell their stock at a grossly inadequate price. DCI also alleged that Dyer, with the intent and purpose of interfering with DCI's business relations and contracts in an attempt to dissolve DCI, had: (i) within two years sold or offered for sale a list of shareholders and/or of holders of voting trust certificates for shares of DCI, (ii) aided or abetted someone in procuring a list of shareholders and/or holders of voting trust certificates, and (iii) improperly used information secured through a prior examination of the books and records of account, minutes, or share transfer records of DCI. During the hearing, Geeting testified about specific instances of Dyer's improper cash payments to himself and others, failure to maintain financial records, conduct detrimental to the company, and threats to put the company out of business. This testimony, along with DCI's answer, is sufficient to raise a fact issue as to Dyer's proper purpose.

133 S.W.3d at 882–83 (citing *Uvalde Rock Asphalt*, 425 S.W.2d at 819–20).

By contrast, allegations that are simply conclusory or that allege only a hostile relationship between the shareholder and corporation are not enough. When a corporation alleged that the shareholder's demand was "in bad faith and for an improper purpose," stemmed only from "a long but disagreeable relationship between the parties," and was calculated "to force [the corporation] either to purchase [the shareholder]'s stock at a grossly inflated price or to sell to [the shareholder] at a grossly inadequate price," the court concluded that such allegations did not raise a fact issue on "proper purpose" because they were "merely conclusions and clearly distinguishable from the allegations in the answer filed in *Uvalde*." *Chavco Inv. Co. v. Pybus*, 613 S.W.2d 806, 809 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.); *see also Shioleno*

5

*v. Sandpiper Condos. Council of Owners, Inc.*, No. 13-07-00312-CV, 2008 WL 2764530, at \*4, 6 n.14 (Tex. App.—Corpus Christi–Edinburg July 17, 2008, no pet.) (mem. op.) (corporation did not plead or present evidence of any lack of proper purpose); *Citizens Ass'n for Sound Energy v. Boltz*, 886 S.W.2d 283, 289 (Tex. App.—Amarillo 1994, writ denied) ("antagonism" or "hostility" between shareholder and corporation does not suffice to raise lack of "proper purpose"). The court in *Chavco Investment* concluded that the corporation had pleaded conclusory statements but no "specific facts." 613 S.W.2d at 809; *accord Citizens Ass'n for Sound Energy*, 886 S.W.2d at 289–90 (relying on *Chavco Investment* to conclude that corporation did not plead "specific facts showing a lack of proper purpose").

With these authorities in mind, we turn to Elusive's live petition and to the Response and its attachments. In the live petition, Elusive alleges that White downloaded confidential information from Elusive, signed a nondisclosure agreement concerning the information, created a new business while still employed by Elusive, and disclosed the information to his new business so it could compete with Elusive. Elusive goes on to allege that White called a client of Elusive's and said that Elusive "did a poor job" on the client's project and that White disclosed Elusive's confidential information to several other clients or prospective clients of Elusive's.

In the Response, Elusive offers further allegations for what it thought were White's true purposes for his books-and-records demand and relies on an attached declaration by its CEO. Elusive contends that there is hostility between White and itself, claiming that he made his demand only after Elusive had filed suit against him "alleging numerous wrongful acts in his capacity as a corporate officer" before it fired him. It thus characterizes his demand as one simply "to dig up . . . 'dirt'" to use against it in negotiations. Both the Response and the CEO's declaration say

6

that White created the competing business shortly before leaving Elusive and "misappropriat[ed] [Elusive's] assets, business opportunities and confidential information to benefit himself and his new business venture." His actions in this regard, the CEO swore, included downloading and refusing to return "significant and substantial confidential and proprietary information" like "client contracts, lead sheets, estimating formulas, bids, pricing, subcontractors, sales leads, contracts, tax returns, and technical data such as construction plans and specifications." White used this information, according to the CEO, "to undercut Elusive's pricing," "to divert in-demand Elusive subcontractors to work on [White's new business's] projects," to tell the past Elusive client that Elusive had done a poor job on its project, and to take the opportunities for specified projects away from Elusive for White's new business. The Response and the CEO's declaration also accuse White of false motives for the books-and-records demand: while White supports the demand in part by alleging that he seeks to investigate profligate spending by Elusive, the Response says that he had in reality "approved" and "freely shared in the benefits of all such purchases," including by signing one of the checks used for one such purchase. Finally, the CEO swore that White had used "Elusive funds to make unauthorized purchases" while still with the company.

We conclude from the allegations in the Second Amended Petition and amended answer and the statements in the Response and attached declaration by the CEO that Elusive sufficiently raised a fact issue on "proper purpose" under Section 21.218(b). The Response and declaration assert more than simply hostility or mere conclusory statements without specific facts. Instead, the CEO named specific kinds of documents that White had allegedly taken and refused to return and the specific customers who were business opportunities for Elusive that White allegedly usurped for his new business, using the unreturned confidential information to land those deals. There were thus specific facts about White's alleged bid for competitive advantage by

7

seeking more of Elusive's records. *See Uvalde Rock Asphalt*, 425 S.W.2d at 819–20; *Dyer Custom Installation*, 133 S.W.3d at 882–83. And the Response, with supporting declaration evidence, discussed White's "improperly us[ing] information secured through a prior" download of records from Elusive and his alleged improper past purchases constituting "conduct detrimental to the company." *See Dyer Custom Installation*, 133 S.W.3d at 882–83.

We stress that Elusive's live petition, answer, and Response and attached declaration are not necessarily conclusive, at this procedural stage, about White's lacking a "proper purpose." They are instead—and they need only have been—sufficient to raise a fact issue. *See Uvalde Rock Asphalt*, 425 S.W.2d at 820. After White filed his books-and-records mandamus petition, Elusive filed a jury demand, and there is no argument before us that the jury demand was otherwise ineffective. *See generally* Tex. R. Civ. P. 216. Elusive raised a fact issue on "proper purpose" and so is entitled to a jury trial on the issue. Because it denied Elusive this right, the trial court abused its discretion.[1] *See Dyer Custom Installation*, 133 S.W.3d at 883 (trial court abuses its discretion when it denies jury trial to corporation that has raised fact issue on "proper purpose").

**CONCLUSION**

We conditionally grant Elusive's petition for writ of mandamus and order the trial court to vacate its "Order Granting Jacob White's Application for Mandamus – Books and

---

[1] Because we conclude that Elusive is entitled to mandamus relief on this basis, we need not consider Elusive's alternative argument that the trial court abused its discretion because White failed to provide a "written demand stating a proper purpose," as required by Section 21.218(b). *See* Tex. R. App. P. 47.1, 52.8(d).

8

Records." *See id.* We are confident that the trial court will comply, so our writ will issue only if it does not.

_____

Chari L. Kelly, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Filed: December 30, 2021