**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-19-00155-CV**
_____

**PACIFIC WORLD ENERGY LTD, Appellant**

**V.**

**PIE INVESTMENTS LLC, Appellee**

_____

**On Appeal from the 410th District Court**
**Montgomery County, Texas**
**Trial Cause No. 18-01-00271-CV**
_____

**MEMORANDUM OPINION**

Appellant Pacific World Energy LTD ("Pacific") appeals from the trial court's orders dismissing Pacific's petition for writ of mandamus, granting summary judgment in favor of appellee PIE Investments LLC ("PIE"), denying Pacific's motion for summary judgment, and denying Pacific's request for attorney's fees. We affirm the trial court's judgments.

BACKGROUND

The proceedings below began on January 8, 2018, when Pacific filed a petition for mandamus to compel PIE "to permit an examination and copying of PIE's books and records[.]"[1] Pacific pleaded that it had entered into an agreement with Philippe E. Mulacek, the director of PIE, to purchase 25% of the membership interests in PIE for $100,000,000. Pacific asserted that it paid the $100,000,000 and now owns 25% of the membership interests in PIE. According to Pacific's petition, Mulacek owns the remaining 75% of the membership interests in PIE. Pacific pleaded that its owner, Carlo Civelli, has been a co-investor with Mulacek "in other businesses for many years." Pacific maintained that it made multiple requests for information from PIE orally, by email, and by letter. According to Pacific, before November 16, 2017, its counsel requested PIE's corporate books and records from PIE's counsel and Mulacek, but PIE only produced two Company Unit Certificates, which showed ownership by Mulacek and Pacific, and "a copy of a partial assignment and assumption of a membership interest dated September 24, 2014."

Pacific pleaded that after PIE failed to produce the requested records, Pacific's counsel sent a written demand letter to PIE on November 16, 2017, which requested

---

[1]"A method for the enforcement of the right of inspection or examination of the books and records of a corporation is by mandamus." *Uvalde Rock Asphalt Co. v. Loughridge*, 425 S.W.2d 818, 820 (Tex. 1968) (citing *Moore v. Rock Creek Oil Corp.*, 59 S.W.2d 815, 817 (Tex. Comm'n App. 1933, judgmt. adopted)).

(1) PIE's organization and governance documents; (2) any voting agreement, voting trust, proxy or other instrument to which any member of PIE is a party and which directly or indirectly relates to the voting of membership interests in PIE; (3) any instruments evidencing any sale, conveyance, assignment, gift, donation, or other transfer by any member of PIE from its inception to November 16, 2017; (4) the unit ledger identifying all present unit-holders and each's unit ownership interests in PIE as of November 16, 2017; (5) complete financial statements and accounts from PIE's inception to November 16, 2017; (6) evidence of timely filing of all required Texas and federal tax returns, as well as information reports required to be filed with the Texas State Comptroller's Office; and (7) all written resolutions, consents, "or other similar written approvals or actions" of PIE's members or directors, from PIE's inception until November 16, 2017. According to Pacific, PIE's counsel emailed that PIE would reply in due course, but when PIE had not responded by December 5, 2017, Pacific's counsel "followed up with counsel for PIE," and PIE's counsel "promised to provide all of the requested document on or before January 15, 2018[.]" Pacific pleaded that PIE's counsel provided PIE's "unaudited financials since inception and franchise tax filings[,]" but never provided other documents.

Pacific pleaded that PIE's balance sheet of September 30, 2017, "showed assets of only $4,410.94." According to Pacific, PIE's balance sheet for September 2016 showed assets of $449,729.17, and the balance sheet for September 2014

3

showed assets of $500,000. According to Pacific, Mulacek had represented that PIE "had substantial oil and gas assets and the company would be used to acquire other substantial oil and gas assets in the United States." Pacific maintained that Mulacek also represented that "he would be investing his own money into PIE to acquire the other oil and gas assets." Pacific pleaded that the documents PIE provided "do not show any oil and gas interests owned by PIE at the time of [Pacific]'s investment or thereafter."

Pacific pleaded that the purposes for its inspection request were to obtain an understanding of (1) PIE's full ownership history, (2) the full extent of PIE's assets and liabilities from September 2014 to date, including contributions by members and any oil and gas interests held or divested by PIE, and (3) the full history of PIE's management and operations since Pacific became a member. Pacific pleaded that PIE's failure to produce the requested documents violated section 101.502 of the Texas Business Organizations Code ("TBOC"), and Pacific asserted that it has the right to recover its costs and expenses under section 101.503. Finally, Pacific pleaded that it had no other adequate remedy to compel PIE to allow inspection and copying of its books and records.

In its response to Pacific's petition for mandamus, PIE asserted that Pacific's request to inspect PIE's records was made in bad faith, intended solely for harassment, and was not made for a proper purpose. According to PIE, the

4

documents underlying the purchase agreement establish that Pacific "had sufficient information before making the investment." PIE asserted that Pacific's request in Texas constituted an attempt to avoid the parties' alleged agreement that disputes would be resolved under Singapore law. PIE maintained that the trial court should award PIE attorney's fees "because PIE's denial of access is proper and because [Pacific] is not acting in good faith and does not have a proper purpose for its inspection." PIE argued that, in the alternative, the trial court should deny Pacific's request for attorney's fees because PIE had a good faith basis for "resisting" Pacific's request. In its reply to PIE's response, Pacific contended that (1) no agreement exists to pursue the request in Singapore; (2) PIE is a Texas company headquartered in The Woodlands; and (3) PIE is not a party to any arbitration agreement between Pacific and Mulacek.

PIE filed a surreply, in which it reasserted that the Texas mandamus was filed to harass Mulacek and stated that the parties' disputes "will undoubtedly be resolved in Singapore." PIE also reiterated its contention that Civelli was a sophisticated investor who represented that he had reviewed all necessary documents regarding PIE when the purchase agreement was executed. PIE further asserted that it raised a fact issue as to Pacific's motives and is entitled to a jury trial, and it contended it was not required to file an answer yet because it had moved to stay the proceeding under the Federal Arbitration Act. The trial judge signed an order granting a jury trial on

5

the issue of whether Pacific sought the records for an improper purpose. Pacific filed a supplemental petition for writ of mandamus, in which it asserted that PIE had waived its right to claim that Pacific's request was for an improper purpose because PIE agreed on multiple occasions to produce its books and records.

PIE filed a hybrid motion for summary judgment, in which it asserted that it agreed to produce the records, and that Pacific cannot recover its attorney's fees and expenses because PIE's refusal is an essential element of Pacific's claim. PIE maintained that although it had promised to produce the requested documents by January 15, 2018, Civelli sued Mulacek in Singapore on December 8, 2017, and on December 11, Civelli sued Mulacek in the Southern District of Texas. PIE asserted that Pacific's "race to the courthouse prior to the parties' agreed January 15 deadline revealed its true motives: it seeks to harass Mulacek, make him spend money unnecessarily, and recover its attorney's fees in the process." According to PIE, the requested documents were provided on December 2, 2018. Citing *Westerburg v. Western Royalty Corporation*, PIE argued that refusal to provide records is an essential element of Pacific's claim for attorney's fees, and that Pacific had no evidence of refusal by PIE. *See Westerburg v. W. Royalty Corp.*, No. 07-15-00082-CV, 2015 WL 8781425, at *5 (Tex. App.—Amarillo Dec. 11, 2015, pet. denied) (mem. op.). PIE asserted that its claimed defense of lack of proper purpose applied both to Pacific's records request and Pacific's claim for attorney's fees.

According to PIE, the evidence demonstrates that PIE promised to provide the records to Pacific, but Pacific filed a petition for mandamus instead. PIE asked the trial court to dismiss Pacific's mandamus and deny Pacific's claim for attorney's fees because PIE never refused to provide the records, and Pacific had the requested records. Attached to PIE's motion as evidence were several pieces of correspondence, in which PIE and Mulacek stated that they would provide the requested records, as well as copies of some of the documents PIE provided to Pacific.

In its response to PIE's motion for summary judgment, Pacific asserted that under section 101.501 of the TBOC, PIE had five days to make its corporate records available for inspection, and PIE failed to comply with that statutory deadline. Additionally, Pacific argued that "PIE's defense that it did not refuse to provide records is not a basis for dismissal of the case." According to Pacific, PIE's defense of lack of refusal is relevant only to the award of attorney's fees and "has nothing to do with PIE's obligation to provide records under the statute." Pacific argued that "PIE's position must be that by resisting production, demanding a jury trial on improper purpose, and requiring the court and parties to prepare for such a trial up to the day of trial, PIE did not refuse to provide records[]" and asserted that there is no good faith basis for such an argument. Pacific argued that *Westerburg* is distinguishable and is not binding authority, and Pacific asserted that the holding in

*Westerburg* is contrary to the statute's purpose of providing for recovery of attorney's fees "as a penalty when records are not provided."

In its reply brief regarding its motion for summary judgment, PIE argued that the undisputed facts demonstrate that PIE agreed to produce its books and records to Pacific on or before January 15, 2018, but then asserted statutory defenses after Pacific filed suit and Civelli initiated "multiple suits in two countries against Phil Mulacek." According to PIE, the only issues in the case are whether PIE must produce its books and records and whether Pacific is entitled to recover its attorney's fees, and PIE "resolved the first issue by producing its books and records before trial." PIE further argued that Pacific has no evidence and no legal support for its argument that PIE's failure to produce the requested records in five days constituted a refusal.

Pacific filed a traditional and no-evidence motion for partial summary judgment as to the issues of (1) whether Pacific is entitled to recover costs, expenses, and attorney's fees due to PIE's refusal to allow Pacific to examine and copy the requested records and (2) whether PIE waived its claims of improper purpose or improper written demand. Pacific asserted that its letters of December 22, 2016, and November 16, 2017, in which it demanded production of records, were written because PIE's in-house counsel had told Pacific's counsel that the requested records were not located in Montgomery County, Texas, but were instead located in

8

Singapore, and "the parties believed it would be easier to scan and email the records." According to Pacific, PIE did not assert that Pacific's request was for an improper purpose or that the written form of Pacific's demand was improper or did not comply with the requirements of the applicable statutes; rather, in response to both demands, PIE agreed to arrange to provide whatever information to which Pacific was entitled. Pacific asserted that because PIE "refused" to produce records, PIE's "self-imposed deadline of January 15, 2018[.]" Pacific again argued that section 101.501(a) of the TBOC required PIE to make responsive documents available on the fifth date after a written request. In addition, Pacific argued that PIE had failed to controvert Pacific's allegation that it sought the records for a proper purpose. According to Pacific, PIE's failure to allow examination and copying of the records upon written request entitled Pacific to attorney's fees. Pacific maintained that PIE waived any claim of improper purpose or lack of good faith, as well as any deficiency of the notice letters, because PIE agreed to provide all statutorily-required records and produced some corporate records on December 5, 2016, and "a majority of its records on December 2, 2017[.]" Pacific argued that PIE has no evidence that Pacific acted "with an improper purpose or not in good faith."

In its response to Pacific's hybrid motion for summary judgment, PIE asserted that PIE never refused to provide documents, and that "proper purpose" is a separate defense to a claim for attorney's fees, and PIE specifically reserved that claim at the

December 3 pretrial conference. PIE again cited *Westerburg* for the proposition that a shareholder was not entitled to attorney's fees because the corporation never refused to provide the requested records. *See Westerburg*, 2015 WL 8781425, at *3-4. According to PIE, *Westerburg* is the only reported case that is on point, and the *Westerburg* court's decision is "well-reasoned and supports PIE's motion for summary judgment." PIE asserts that it produced share certificates and financial statements "on or before December 5, 2017[,]" but Civelli nevertheless subsequently sued Mulacek. PIE also argued that although Pacific states that its request was made to determine PIE's ownership history, assets and liabilities, and its management and operations, Pacific knew PIE's ownership and financial status before filing suit. Moreover, PIE asserted that its willingness to produce books and records does not waive its defenses to Pacific's claim for attorney's fees. Specifically, PIE argued that "a party can produce books and records while still contending that the requesting party is not acting in good faith and does not have a proper purpose." PIE further argued that Pacific's request did not state a purpose, and that although PIE agreed to fully respond by January 15, 2018, and immediately provided financial statements, Pacific filed a petition for writ of mandamus. According to PIE, "[s]pecifically-pleaded facts regarding improper purpose, coupled with evidentiary support for those facts," are sufficient to raise a fact issue as to proper purpose. PIE asserted that its verified amended response to Pacific's petition for mandamus constitutes

10

"evidence that [Pacific] brought this mandamus action in bad faith and for an improper purpose."

On April 26, 2019, the trial court signed an order granting PIE's hybrid motion for summary judgment, dismissing the petition for writ of mandamus, and denying Pacific's request for attorney's fees, as well as an order denying Pacific's hybrid motion for summary judgment. Pacific then filed this appeal, in which it asserts that: (1) its written requests complied with the plain language of the TBOC; (2) PIE's failure to provide records for a year after the mandamus was filed constituted a refusal to produce records as a matter of law; (3) PIE waived its challenges to Pacific's recovery of fees; and (4) Pacific raised genuine issues of material fact regarding its right to recover fees. We interpret Pacific's issues as challenging the trial court's orders granting summary judgment in favor of PIE and denying Pacific's motion for partial summary judgment.

## ANALYSIS

"We review a petition for writ of mandamus under a clear abuse of discretion standard." *In re Dyer Custom Installation, Inc.,* 133 S.W.3d 878, 880 (Tex. App.—Dallas 2004, orig. proceeding) (citing *Walker v. Packer*, 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding)). The trial court clearly abuses its discretion when it errs in analyzing or applying the law to the facts, or if the trial judge has but one reasonable decision and does not make that decision." *Id*. (citing *Walker*, 827

S.W.2d at 840). As the *Westerburg* court noted in its opinion, "[t]he case is before us in an unusual posture[]" because although the parties presented the case on cross-motions for summary judgment, the suit began as a petition for writ of mandamus, and "the issues and argument on appeal are not couched in terms typical of those following a summary judgment." *Westerburg*, 2015 WL 8781425, at *2 n.3, *4. Therefore, "the proper standard of review focuses on sufficiency of the evidence, rather than the *de novo* standard by which summary judgments are reviewed*." Id.* at *5 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)).

In reviewing the legal sufficiency of the evidence, we review the evidence in the light most favorable to the trial court's findings, crediting evidence favorable to that party if a reasonable fact finder could and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 827. Evidence conclusively establishes a vital fact when the evidence is such that reasonable people could not disagree in their conclusions. *Id.* at 814-17. In reviewing the factual sufficiency of the evidence, we weigh all of the evidence, and we will set aside the judgment only if it is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id*. at 826; *see also Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). In a bench trial, the trial court acts as the fact finder, is the sole

judge of the weight and credibility of the witnesses and evidence, and is entitled to resolve any conflicts in the evidence. *See City of Keller*, 168 S.W.3d at 819.

Section 3.153 of the TBOC provides that each owner or member of a filing entity may examine the filing entity's books and records "to the extent provided by the governing documents of the entity and the title of this code governing the filing entity." Tex. Bus. Orgs. Code Ann. § 3.153. Under section 3.152(b) of the TBOC, a court may require a filing entity to open its books and records for inspection or copying upon a showing that, among other things, (1) a demand to inspect the entity's books and records was made and (2) the entity refused the good faith demand to inspect its books and records. *Id*. § 3.152(b). Section 101.501 of the TBOC requires a limited liability company to keep certain records at its principal office in the United States, or to make available to a person at its principal office in the United States, certain categories of documents "not later than the fifth day after the date the person submits a written request to examine the books and records of the company under Section 3.152(a) or 101.502[.]" *Id*. § 101.501(a). Section 101.502 of the TBOC provides that a member of a limited liability company may, "on written request and for a proper purpose . . . examine and copy at any reasonable time and at the member's or assignee's expense" records that the TBOC requires the limited liability company to keep. *Id*. § 101.502. Pursuant to section 101.503 of the TBOC, which is entitled "Penalty for Refusal to Permit Examination of Certain Records[,]"

13

a limited liability company that refuses to allow a member to examine and copy records "on written request that complies with Section 101.502(a) . . . is liable to the member . . . for any cost or expense, including attorney's fees, incurred in enforcing the member's . . . rights. *Id.* § 101.503(a). Additionally, section 101.503 provides that it is a defense that the person or entity suing "was not acting in good faith or for a proper purpose in making the . . . request for examination." *Id.* § 101.503(b)(2).

The trial court did not specify its basis for granting PIE's hybrid motion for summary judgment. Therefore, if any of the grounds alleged in the motion are meritorious, we will affirm the summary judgment. *See Harwell v. State Farm Mut. Auto Ins. Co.*, 896 S.W.2d 170, 173 (Tex. 1995).

The parties agree that PIE eventually provided all the requested documents, thus leaving the issue of whether the trial court erred by denying Pacific the right to recover attorney's fees as the issue to be decided in this appeal.[2] Under section 101.503, a limited liability company that "refuses" to comply with a records request that was made in good faith and for a proper purpose is liable for the requesting party's attorney's fees. Tex. Bus. Orgs. Code Ann. § 101.503. The *Westerburg* court

---

[2] In its four appellate issues, Pacific argues that (1) its written requests complied with the TBOC, (2) PIE's failure to provide records for a year after the mandamus was filed constitutes a "refusal" as a matter of law, (3) PIE waived its defenses of improper purpose and Pacific's alleged failure to include the proper content in its requests, and (4) Pacific raised genuine issues of material fact regarding its right to recover fees.

explained that the party asking the trial court to order production of records has the burden of persuasion. *See Westerburg*, 2015 WL 8781425, at *5. To recover attorney's fees, section 101.503 explicitly requires that the requesting party demonstrate that the limited liability company refused to comply with the request. *See* Tex. Bus. Orgs. Code Ann. § 101.503(a). As was the case in *Westerburg*, section 101.503 does not define the term "refuse." *See Westerburg*, 2015 WL 8781425, at *5. We therefore afford the term "its common, ordinary meaning, as stated in a dictionary." *Id*. (internal citation omitted). If a word has more than one common meaning, we will apply the meaning that is most consistent with its statutory context. *Id*. "Refuse" means "'[t]o deny, decline, reject[,]'" and it is distinguishable from the term "fail" because "'refuse involves an act of the will, while 'fail' may be an act of inevitable necessity.'" *Id*. (quoting BLACK'S LAW DICTIONARY 1282 (6th ed. 1990)). Another commonly accepted meaning of "refuse" is "'to show or express unwillingness to do or comply with.'" *Id*. (quoting MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1047 (11th ed. 2003)). "Fail may be defined as falling short." *Id*.

In this case, as in *Westerburg*, the undisputed evidence demonstrates that PIE consistently agreed to produce documents, initially produced some responsive documents, and ultimately produced all responsive documents. Considering the entire record, we conclude that the trial court's implicit conclusion that PIE did not

15

refuse to provide the requested documents is supported by sufficient evidence. *See Westerburg*, 2015 WL 8781425, at *5-6. In addition, having concluded that the evidence supports the trial judge's implicit conclusion that PIE did not refuse to comply with Pacific's request, we need not decide (1) whether Pacific's requests complied with the plain language of the TBOC or (2) whether PIE waived its defenses of improper purposes and the form of Pacific's requests, so we need not address issues one and three. *See* Tex. R. App. P. 47.1. Pacific cited section 101.503 itself, but otherwise cited no authority in support of its contention that PIE's refusal to provide records for a year after the mandamus was filed constitutes a refusal as a matter of law under section 101.503 of the TBOC. *See Westerburg*, 2015 WL 8781425, at *5-6; *see also* Tex. R. App. P. 38.1(i) (stating that appellate briefs must contain appropriate citations to authorities and to the record); *Plummer v. Reeves*, 93 S.W.3d 930, 931 (Tex. App.—Amarillo 2003, pet. denied) (An issue that is unsupported by argument or citation to any legal authority presents nothing for the court to review.). The text of section 101.503 does not support such a contention, and, as discussed above, *Westerburg* holds to the contrary. *See* Tex. Bus. Orgs. Code Ann. § 101.503(a); *see also Westerburg*, 2015 WL 8781425, at *5-6.

For all these reasons, we conclude that the trial judge did not abuse her discretion by denying Pacific's request for attorney's fees and dismissing the petition for writ of mandamus. Accordingly, we overrule issues two and four and affirm the

trial court's judgments dismissing the petition for writ of mandamus, granting PIE's motion for summary judgment, denying Pacific's motion for summary judgment, and denying Pacific's request for attorney's fees.

AFFIRMED.

 

_____
STEVE McKEITHEN
Chief Justice

Submitted on February 18, 2020
Opinion Delivered September 3, 2020

Before McKeithen, C.J., Kreger and Horton, JJ.